| | |
|---|---|
| BRIAN HARPOLE,<br><br>  Plaintiff,<br><br>  v.<br><br>CANDACE OWENS, *et al.*,<br><br>  Defendants. | Case No. 3:26-cv-00556<br><br>Chief Judge William L. Campbell, Jr.<br>Magistrate Judge Luke A. Evans<br><br>JURY DEMAND |

## PLAINTIFF'S TIME-SENSITIVE MOTION & MEMORANDUM OF LAW TO REQUIRE DEFENDANTS TO PRESERVE DOCUMENTS, CELLULAR TELEPHONES, AND OTHER ELECTRONIC DEVICES

Plaintiff Brian Harpole, by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 26 and 37(e) and the Court's inherent authority, respectfully moves the Court for entry of an order requiring Defendants to preserve their documents, cellular telephones, and other electronic devices pending this litigation. This Motion is necessary because the Parties cannot reach agreement about the scope of Defendants' preservation obligations. Plaintiff has already preserved his own devices and is cloning his cell phone. Defendants have indicated that they will oppose this motion—*their opposition is reason enough to grant it*.

In support of this Motion, Plaintiff states as follows:

This is an action for defamation and civil conspiracy arising from a coordinated campaign in which Defendant Snow fed Defendant Owens a fabricated story—that Plaintiff conspired with military officials at Fort Huachuca to assassinate Charlie Kirk—which Owens then published to her millions of followers. The communications that prove the conspiracy and establish Defendants' state of mind reside, in substantial part, on the Defendants' cellular telephones and electronic devices. These include the telephone calls of December 8 and 9, 2025; the text messages and other

communications by which Owens and Snow coordinated Snow's December 18, 2025, podcast appearance; Owens's text messages to Plaintiff; and the screenshots, "incident report," call logs, and "deleted media" referenced throughout the Complaint.

Evidence of this kind is unusually fragile. Cell phones are routinely replaced, reset, and discarded; messaging applications are commonly configured to automatically delete messages after a set period; and individual communications can be erased in seconds and are often unrecoverable once gone. Absent an order from the Court, there is a substantial risk that this irreplaceable and highly probative evidence will be lost before it can be secured, whether through ordinary device turnover, the operation of auto-delete settings, or intentional destruction.

Plaintiff therefore requests, for the reasons set forth in the accompanying Memorandum of Law, an order that: (a) requires the parties to preserve their cellular telephones and other electronic devices, and all data stored thereon; (b) prohibits the parties from deleting, altering, wiping, resetting, selling, trading in, discarding, or otherwise disposing of any such device or data during the pendency of this litigation; and (c) requires all parties to disable immediately any disappearing-message, auto-delete, or auto-expiration feature on any such device or messaging application; and (d) prohibits the parties from transferring, relocating, or migrating any such device or data beyond the practical reach of discovery, including to accounts or servers located outside the United States. Pursuant to Local Rule 7.01(a), the grounds for this Motion are set forth in the incorporated Memorandum of Law that follows.

**MEMORANDUM OF LAW IN SUPPORT**

## I.      INTRODUCTION

Plaintiff Brian Harpole is the founder of a private security firm that, for years, provided protective services to Charlie Kirk and Turning Point USA. After Kirk was murdered by Tyler Robinson (and only Tyler Robinson), Defendants Candace Owens and Mitchell Snow falsely and

publicly accused Harpole of participating in a government plot to assassinate Kirk. The defamation was carried out electronically. It began with a series of private telephone calls and text messages between Snow and Owens and culminated in Owens's publication of Snow's fabricated "Fort Huachuca" story on her podcast and across social media, to an audience of millions.

Those private communications—and the metadata, call logs, screenshots, and "deleted media" associated with them—are the heart of this case. They will establish what Snow told Owens and when he told her; how the two coordinated Snow's on-air appearance; and, critically, what Owens knew about the falsity of the story at the time she chose to publish it, including her admitted review of Harpole's flight records. This is the central proof of publication, falsity, actual malice, and the agreement underlying the conspiracy and aiding-and-abetting claims.

This evidence lives on Defendants' cellular telephones and electronic devices, and it is acutely vulnerable to loss. To prevent the destruction of relevant evidence and to preserve the status quo, Plaintiff asks the Court, pursuant to Federal Rule of Civil Procedure 37(e) and its inherent authority, to order Owens and Snow to preserve their devices and the data those devices contain. The Motion seeks preservation and nothing more. At the appropriate stage of discovery, Defendants will be asked to submit them for imaging by a neutral examiner operating under a protocol that safeguards privilege and privacy. That later process means little, however, if the devices are altered or discarded in the meantime. The narrow relief requested is meant to ensure that Plaintiff can try his case on the merits, and it is fully consistent with the standards federal courts apply to requests of this kind.

## II. FACTUAL BACKGROUND

The factual allegations of the Complaint (Doc. No. 1) are incorporated by reference. The following allegations bear directly on the electronic evidence at issue:

3

**The originating telephone call.** On or about December 8 and 9, 2025, Owens telephoned Snow and spoke with him. During that conversation, Snow conveyed to Owens the fabricated account that Harpole had been seen leaving a meeting with senior military officials at Fort Huachuca on September 9, 2025—the day before Kirk was killed. Compl. ¶¶ 8, 141. Snow "authorized Owens to tell his false story on her podcast." Compl. ¶ 8.

**The coordinating communications.** "[A]t some point after December 9, 2025, but before December 18, 2025, Snow and Owens communicated a second time for the purpose of scheduling and coordinating Snow's December 18, 2025[] appearance on Owens's . . . podcast." Compl. ¶ 8; *see also id.* ¶ 146 ("Owens contacted Snow a second time to invite him onto her podcast."). These communications are direct evidence of the alleged agreement to defame. Compl. ¶¶ 142–43.

**Owens's text messages to Plaintiff.** Owens repeatedly texted Harpole seeking comment. In one message, she stated she found it "odd" that she could not get Harpole "to confirm or deny" his whereabouts. Compl. ¶ 59. Owens publicly characterized Harpole's non-response to her "texts" as suspicious. Compl. ¶¶ 55, 68.

**The screenshots, "incident report," and call logs.** Owens published a screenshot she claimed was an "incident report" corroborating Snow's story. The screenshot "clearly depicts a cursor on the screen, indicating that the screenshot was taken as the text was being typed," suggesting fabrication. Compl. ¶¶ 63–65. The Complaint further references a "call log" Owens relied upon and the possibility that it "was doctored" or sent "from somebody else's phone." Compl. ¶ 111. Plaintiff also seeks relief concerning "deleted media." Compl., Prayer for Relief ¶ ii.

**Owens's knowledge of falsity.** Owens admitted publicly that she had reviewed Harpole's flight records—records establishing that it was "physically impossible" for Harpole to have

attended the alleged meeting—yet she continued to publish and amplify Snow's story. Compl. ¶¶ 60–62, 155. The timing and content of her electronic communications are therefore central to the question of actual malice.

**Notice and posture.** Owens has been on notice of this dispute for months. On December 16, 2025, she publicly stated her belief that Harpole would sue her. Compl. ¶ 48. Plaintiff's counsel emailed a pre-suit demand letter to Owens and her attorney on April 22, 2026, and filed this action on April 30, 2026. During the meet-and-confer process, on June 22, 2026, Owens's counsel stated that she "will oppose any motion seeking a preservation order at this time." Defendant Snow has yet to be served, but Plaintiff expects that he, like other relevant individuals who have been served similar letters,[1] will similarly oppose the Motion.

Each category of evidence described above is created, transmitted, received, and stored on cellular telephones and electronic devices within the possession, custody, or control of Owens and Snow. Much of it exists nowhere else. Because it consists of electronically stored information

---

[1] Social media, especially X, provides a home for a small sub-culture of Charlie Kirk conspiracy theorists – the most prominent, other than Ms. Owens, are co-Defendant Mitchell Snow (who is the apparent originator of the fabricated Fort Huachuca story), Elizabeth Lane (who recently interviewed Ms. Owens about the Charlie Kirk murder), Baron Coleman (who was served a preservation letter), Stew Peters (who was served a preservation letter but posted it to X and publicly claimed he would not comply), and Blake Bednarz (who was also served a preservation letter but in response deleted his X account). Emails, text messages and other communications between and among the Defendants and these third-party witnesses must be preserved. But these are conspiracy theorists operating in the unaccountable shadows of social media – no doubt communications have been deleted.

Ms. Owens also created a legal defense fund for co-Defendant Snow in connection with his appearance on her podcast, which has raised $150,422 to date. *See For Mitch*, GiveSendGo, https://www.givesendgo.com/candacepodcast (last visited June 22, 2026).

Finally, Defendant Snow publicly stated he "gave everything to Candace Owens." *See* Exhibit A. He further publicly stated that "the phones [plural] are locked up in safety deposit." *See* Exhibit B. Whatever "everything" means and whatever "phones" he is talking about need to be completely and immediately preserved.

resident on personal mobile devices and in messaging applications, it is uniquely susceptible to alteration, overwriting, and irretrievable loss through the ordinary, everyday operation of those devices.

## III. LEGAL STANDARD

A party's obligation to preserve evidence arises "when a party should have known that the evidence may be relevant to future litigation." *Beaven v. DOJ*, 622 F.3d 540, 553 (6th Cir. 2010) (cleaned up). That duty is well established, and it attaches without any order from the Court. *See John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001))).

Federal Rule of Civil Procedure 37(e) presupposes and reinforces this duty, providing for remedial measures and sanctions where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). The most severe sanctions are available where a party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

The authority to prevent and remedy spoliation "arises . . . 'from a court's inherent power to control the judicial process.'" *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc) (cleaned up); *see also id.* (ruling that federal law governs spoliation sanctions in federal court, and the district court has "broad discretion" in crafting a proper sanction). Rule 26 likewise authorizes the Court to enter orders governing the timing, sequence, and manner of preservation and

6

discovery. Fed. R. Civ. P. 26(b)(2)(C), 26(c), 26(d). The Court's inherent authority also empowers it to act prophylactically—before evidence is lost—by ordering preservation and, where appropriate, forensic imaging. *See Goetz*, 531 F.3d at 460 (confirming that a court order is "acceptable as a means to preserve electronic evidence"). Such orders are "by no means automatic," *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 369 (S.D.N.Y. 2006), yet "such orders 'are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication.'" *Id.* at 370 (quoting *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 136 (2004)).

In evaluating whether such an order is proper, courts routinely apply the three-factor balancing test announced in *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004), which weighs (1) the "level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence"; (2) the "irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation"; and (3) "the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation." *See, e.g.*, *Treppel*, 233 F.R.D. at 370; *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1072 (C.D. Cal. 2009); *United States ex rel. Smith v. The Boeing Co.*, No. Civ.A. 05–1073–WEB, 2005 WL 2105972, at *2 (D. Kan. Aug. 31, 2005); *Daniel v. Coleman Co., Inc.*, 06–5706 KLS, 2007 WL 1463102, at *2 (W.D. Wash. May 17, 2007); *Jacobs v. Scribner*, No. 1:06-cv-01280-AWI-NEW (DLB) PC, 2007 WL 1994235, at *1 (E.D. Cal. July 5, 2007); *Jardin v. Datallegro, Inc.*, No. 08-CV-1462-IEG-RBB, 2008 WL 4104473, at *1 (S.D. Cal. Sept. 3, 2008); *Echostar Satellite LLC v. Freetech, Inc.*, No. C 07–06124

JW, 2009 WL 8399038, at *2 (N.D. Cal. Jan. 22, 2009); *Oliphant v. Villano*, No. 3:09-cv-862 (JBA), 2010 WL 537749, at *11 (D. Conn. Feb. 11, 2010); *Stanley v. Ayers*, No. 07-cv-04727-EMC, 2018 WL 4488298, at *2 (N.D. Cal. Sept. 17, 2018).

The scope of any resulting order can be broad. An order may issue as to any evidence discoverable under Rule 26(b)(1), "without the necessity of establishing that the evidence will necessarily be relevant and admissible at trial," *Capricorn*, 220 F.R.D. at 434, and is especially appropriate where the endangered material is "one-of-a-kind" or "integral and essential to a party's case," *id.* at 435.

## IV.    ARGUMENT

Defendants' duty to preserve has already attached. *Beaven*, 622 F.3d at 553. On **December 16, 2025**, Owens publicly stated that she expected Harpole to sue her. Compl. ¶ 48, and her obligation to preserve began no later than that day. A standing duty, however, does not by itself ensure that evidence survives. The communications at the core of this case—the December 8 and 9 call(s), the coordinating messages, Owens's texts, the screenshots, the "incident report," and the call logs—are stored on cellular telephones and devices that are, by their nature, transient repositories of evidence.

Each *Capricorn* factor favors Plaintiff. The risk of loss is concrete: Cellular telephones are routinely upgraded, traded in, factory-reset, and discarded in the ordinary course. Modern messaging platforms—including iMessage, Signal, Telegram, and WhatsApp—permit users to enable "disappearing" or auto-delete settings that permanently erase messages after a fixed interval. And individual texts, call logs, and images can be deleted with a few taps, often beyond recovery. Any one of these ordinary events would destroy evidence that bears directly on publication, falsity, malice, and the conspiracy. The concern is heightened here, where the

Complaint alleges that Defendants have already deleted media, *see* Compl., Prayer for Relief ¶ ii, and where the central factual dispute turns on the authenticity and provenance of electronically generated material, *see* Compl. ¶¶ 63–65. *See Capricorn*, 220 F.R.D. at 437 ("Had there been evidence of attempted damage or destruction of the report or the data compilations used to produce it, the Court's level of concern for the protection of the integrity and existence of the evidence would be different."). Plaintiff is further concerned that responsive data may be relocated or rendered inaccessible to discovery, including through storage in locations beyond the practical reach of the Court.

The evidence is irreplaceable and central to Plaintiff's claims. The harm from its loss would be irreparable, because no secondary source can reconstruct private device-level communications and metadata. And a preservation order imposes only a modest burden—namely, that Defendants refrain from altering, deleting, resetting, or disposing of their devices and disable any auto-delete functionality. It imposes no meaningful cost on Defendants and forecloses no legitimate use of the devices at issue, and a party with nothing to conceal has little reason to resist keeping its own evidence intact. Indeed, Defendant Owens's stated intent to object to the Motion is hard to square with any interest the Court would regard as worthy of protection, especially against the backdrop of the deletion already alleged. At a minimum, it confirms that an order, rather than reliance on Defendants' voluntary compliance, is necessary to ensure that this evidence survives for examination during discovery.

That the evidence here is electronically stored information—resident on personal devices and within messaging applications engineered to purge data automatically—only sharpens the need for an order. Such information is lost not only through deliberate misconduct but also through the everyday operation of the devices on which it lives, which is precisely the circumstance Rule

9

37(e) was written to address. An order requiring Owens and Snow to preserve their devices and the data on them is, therefore, amply justified.

Courts applying these factors have not hesitated to compel the preservation of electronic evidence—and to prevent the very acts that threaten it—where a party's devices and messaging data are at risk. *See, e.g.*, *ACS Consultant Co. v. Williams*, No. 06-11301, 2006 WL 897559, at **8–10 (E.D. Mich. Apr. 6, 2006) (enjoining defendants from deleting data or wiping any hard drive, laptop, or handheld device); *Stanley*, 2018 WL 4488298, at *3 (granting preservation order). And the danger is not abstract. In *Paisley Park Enterprises, Inc. v. Boxill*, the defendants neglected to disable the auto-delete function on their cellphones and then wiped and discarded the devices, permanently destroying responsive text messages—conduct the court sanctioned under Rule 37(e). 330 F.R.D. 226, 231–32, 238 (D. Minn. 2019). So too in *Goetz*, where relevant emails "automatically roll[ed] off the system" after 180 days and departing custodians left without preserving anything. 531 F.3d at 454. Owens and Snow hold the same fragile categories of proof that these cases show can disappear through nothing more than the ordinary use of a phone, the lapse of an auto-delete timer, or a single device trade-in.

## V. PROPOSED PRESERVATION PROTOCOL

To protect all parties' interests, Plaintiff requests an order providing as follows:

1. **Immediate Preservation.** Upon entry of the order, all Parties shall immediately preserve, and shall not delete, alter, wipe, reset, sell, trade in, discard, or otherwise dispose of, any cellular telephone or other electronic device used by them at any time since September 1, 2025, together with all data stored on or accessible through such devices, including text messages, iMessages, call logs, application data (including Signal, Telegram, WhatsApp, and similar messaging applications), photographs,

screenshots, and associated metadata. This includes all corporate-owned devices for co-Defendants Candace Owens, LLC and GeorgeTom, Inc.

2. **Disable Auto-deletion.** All Parties shall immediately disable any "disappearing message," auto-delete, or auto-expiration feature on any such device or messaging application and shall not enable any such feature during the pendency of this litigation.

3. **Prohibit Export.** According to open-source intelligence on social media, Defendant Owens *might* be leaving the United States. Ms. Owens recently visited Russia to participate in the St. Petersburg International Economic Forum (widely considered a state-run propaganda conference) where she interacted with high-level state officials and publicly indicated she would apply for a long-term visa. This *may* relate to a new Russian program called "Shared Values Visa," which is a fast-track program to a temporary resident permit. Plaintiff recognizes this risk as speculative, but the publicly available circumstantial evidence and Ms. Owens' explicit objection to a preservation order, warrant this additional restriction. All Parties should be prohibited from transferring any preserved or potential evidence outside the United States.

Defendant Mitchell Snow has not yet been served with process or appeared in this case despite the efforts of a private process server and the U.S. Marshal. Plaintiff requests that the foregoing preservation obligations bind Defendant Snow and that the Court direct that a copy of the order be served on Defendant Snow together with the summons and complaint.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff Brian Harpole respectfully requests that the Court enter an Order:

(a) Requiring all Parties to immediately preserve their cellular telephones and other electronic devices, and all data stored thereon, and prohibiting them from deleting, altering, wiping, resetting, selling, trading in, discarding, or otherwise disposing of any such device or data during the pendency of this litigation;

(b) Requiring all Parties to immediately disable any disappearing-message, auto-delete, or auto-expiration feature on any such device or messaging application;

(c) Requiring all Parties to preserve all relevant devices and electronically stored information in place, wherever stored, and prohibiting the transfer, relocation, or migration of any such device or information beyond the practical reach of discovery, including to accounts or servers outside the United States;

(d) Providing that, as to Defendant Mitchell Snow, who has not yet been served, the foregoing preservation obligations shall bind him and directing that a copy of this Order be served on Defendant Snow together with the summons and complaint;

(a) Granting such further relief as the Court deems just and proper.

Respectfully submitted,

Matthew Seth Sarelson, Esq.
DHILLON LAW GROUP INC.
1601 Forum Place, Suite 202
West Palm Beach, Florida 33401
Tel: 305.773.1952
msarelson@dhillonlaw.com

THE SWAFFORD LAW FIRM, PLLC
Tara L. Swafford, BPR # 17577
Elizabeth G. Hart, BPR # 30070
321 Billingsly Court, Suite 19
Franklin, TN 37067

12

Tel: (615) 599-8406
Fax: (615) 807-2355
tara@swaffordlawfirm.com
betsy@swaffordlawfirm.com

Jacob William Roth, Esq.*
CONTARINO ROTH LLC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Tel: 561.872.6508
jroth@contarinoroth.com

Attorneys for Plaintiff Brian Harpole
*Admitted pro hac vice

## CERTIFICATE OF GOOD-FAITH CONSULTATION

Pursuant to Local Rule 7.01(a)(1), undersigned counsel certifies that he emailed counsel for the Owens Defendants twice to confer and invite a telephone conference to discuss. They declined and indicated via email they oppose the relief sought and will contest this motion. Plaintiff then reached out a second time to the Owens Defendants and requested that they agree to the relief sought. In response, they again declined and otherwise refused to engage, except to vaguely state "My clients have already taken reasonable steps to preserve discoverable ESI in our possession, custody, and control."

Defendant Snow has not been served, and the undersigned is unaware of how to contact him. Counsel will supplement this certification as appropriate.

Matthew Seth Sarelson, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2026, I filed the document via CM/ECF, which will serve the document on the Owens' Defendants' counsel via email. I further certify that on July 2, 2026, I mailed the filed version of this via Federal Express to Defendant Snow's last known address: 9315 Welsh Drive, Pasco, Washington, 99301 and last known but unconfirmed email address: demossmitch@gmail.com.

Matthew Seth Sarelson, Esq.