**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| BRIAN HARPOLE,<br>    Plaintiff,<br>v.<br>CANDACE OWENS,<br>CANDACE OWENS LLC,<br>GEORGETOM, INC., and<br>MITCHELL SNOW,<br>    Defendants. | **JURY DEMAND**<br>Civil Action No. 3:26-cv-00556<br>District Judge: Unassigned<br>Magistrate Judge: Unassigned |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MITCHELL H. SNOW'S MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiff's Complaint is directed principally at Candace Owens and related entities. As to Snow, the Complaint alleges a telephone conversation with Owens on or about December 8, 2025, coordination of a later interview, and a remote appearance on one podcast episode on December 18, 2025. Compl. ¶¶ 8-9, 36-41. Plaintiff attempts to use those limited contacts to impose liability on Snow for a broader media narrative, editorial framing, repeated publications, and alleged damages that the Complaint attributes mainly to other Defendants.

The Rule 12(b)(2) motion presents the threshold issue. Tennessee authorizes jurisdiction to the constitutional limit, but due process still requires a defendant-created, suit-related connection with Tennessee. The Sixth Circuit's published decision in Carbone v. Kaal, 140 F.4th 805 (6th Cir. 2025), reinforces that personal jurisdiction must be established over each defendant independently and that the relevant forum connection must arise from contacts created by that defendant. Id. at 808-13. Johnson v. Griffin, 85 F.4th 429, 432-36 (6th Cir. 2023), illustrates jurisdiction where challenged speech was deliberately aimed at Tennessee, concerned Tennessee conduct, and sought a Tennessee consequence. The pleaded facts concerning Snow are materially different: Plaintiff is alleged to be a Texas citizen; Snow spoke remotely from

1

Washington; the alleged identification concerned an event in Arizona; and the Complaint does not allege that Snow targeted a Tennessee audience or sought a Tennessee consequence.

If the Court reaches Rule 12(b)(6), the Complaint's own reliance on Episode 282 sharpens the pleading defects. Plaintiff alleges that Snow's words, taken as a whole, conveyed that Harpole had foreknowledge of Charlie Kirk's death and participated in planning, execution, or cover-up. See Compl. ¶¶ 132-133. Yet the publication discloses uncertainty about identity, sets out the observational basis for Snow's identification, includes Owens's statement that she could not confirm whom Snow saw, and includes Snow's later statement that he did not know what would occur the following day. Because Plaintiff expressly relies on context and implication, those immediate qualifications matter.

Snow does not argue that paraphrase is categorically impermissible or that defamation by implication is unavailable. Tennessee recognizes contextual meaning and implication. See Revis v. McClean, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000); Loftis v. Rayburn, No. M2017-01502-COA-R3-CV, 2018 WL 1895842, at *5 (Tenn. Ct. App. Apr. 20, 2018); SmileDirectClub, Inc. v. NBCUniversal Media, LLC, 708 S.W.3d 556, 573, 577 (Tenn. Ct. App. 2024). The narrower defect is that Plaintiff's alleged implication must arise from the publication actually made, not from a version that omits immediate qualifications, changes the referent of a statement, or converts Owens's independent conclusions into Snow's statements.

## II. ALLEGATIONS RELEVANT TO SNOW

The Complaint alleges that Snow resides in Washington. Compl. ¶ 8. It alleges that he spoke by telephone with Owens on or about December 8, 2025, coordinated a later interview, and appeared remotely on Owens's podcast on December 18, 2025. Compl. ¶¶ 8-9, 36-41. It further alleges that Snow stated that he observed a person he believed to be Plaintiff leaving a meeting and expressed confidence in that identification. Compl. ¶¶ 51-52, 128-129.

2

The Complaint then characterizes Episode 282 more broadly. Among other things, it alleges that Snow said Harpole himself 'definitely walked past' him, Compl. ¶¶ 131, 147, 153; that Snow was '95 to 99' percent certain of the identification, id.; that Snow's words collectively implied foreknowledge and participation in planning, execution, or cover-up, Compl. ¶¶ 132-133; and that Snow published that Harpole attended a high-level meeting 'as part of a plot to assassinate Charlie Kirk,' Compl. ¶ 152. Those allegations must be compared with the actual words and surrounding context of the publication Plaintiff repeatedly invokes.

The Complaint separately alleges statements from the December 8 private telephone call, including allegations in paragraphs 127-128 and part of paragraph 153. Episode 282 cannot establish what was or was not said during that earlier call. Snow therefore does not use Episode 282 as proof that those separate private-call allegations are factually impossible. He challenges them on the existing pleading grounds: the Complaint must plead Snow's own actionable statement, the required fault, causation, and a plausible unlawful agreement rather than conclusions attributed collectively to multiple speakers.

For purposes of this Motion only, Snow addresses the Tennessee substantive authorities invoked by the Complaint. Snow does not waive any choice-of-law argument that may become relevant if the action proceeds.

## III. GOVERNING STANDARDS

### A. Rule 12(b)(2)

A plaintiff filing suit in federal court bears the burden of establishing a prima facie basis for personal jurisdiction over each defendant. Carbone, 140 F.4th at 808-09. If the defendant supports a Rule 12(b)(2) motion with evidence and the plaintiff has first made a prima facie showing, the plaintiff may no longer rest on the pleadings and must set forth specific jurisdictional facts. Id. at 809; Peters Broad. Eng'g, Inc. v. 24 Cap., LLC, 40 F.4th 432, 437-38

3

(6th Cir. 2022). Where the Court decides the motion on written submissions without an evidentiary hearing, it views properly supported allegations in the light most favorable to Plaintiff and does not weigh genuinely disputed facts. Intera Corp. v. Henderson, 428 F.3d 605, 614-15 (6th Cir. 2005).

Tennessee's long-arm statute extends to the limits of due process. Johnson, 85 F.4th at 432 (citing Tenn. Code Ann. § 20-2-225(2)); Intera, 428 F.3d at 616. Specific jurisdiction requires purposeful availment or purposeful direction toward the forum, a claim arising from or relating to the defendant's forum contacts, and a connection substantial enough to make jurisdiction reasonable. S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968); Carbone, 140 F.4th at 810; Intera, 428 F.3d at 615.

**B. Rule 12(b)(6)**

A complaint must contain enough factual matter, accepted as true, to state a claim that is plausible on its face. Labels, conclusions, and formulaic recitations do not suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007). Courts disregard conclusory allegations and ask whether the remaining well-pleaded facts plausibly establish liability against the particular defendant. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Collective allegations against 'Defendants' do not, without defendant-specific facts, support a reasonable inference that each defendant is liable. Boxill v. O'Grady, 935 F.3d 510, 518 (6th Cir. 2019).

**C. The Court May Consider Episode 282 Because the Complaint Repeatedly Refers to and Depends on It**

At Rule 12(b)(6), courts ordinarily do not resolve claims using materials outside the pleadings. But the Sixth Circuit permits consideration of a document or publication attached to a motion to dismiss when it is referred to in the complaint and central to the plaintiff's claim, so long as authenticity is not disputed. Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008); Rondigo, LLC

4

v. Twp. of Richmond, 641 F.3d 673, 681 (6th Cir. 2011). Episode 282 is not collateral evidence; the Complaint repeatedly identifies, quotes, paraphrases, and relies upon that publication as a basis for Counts IV and V against Snow. See, e.g., Compl. ¶¶ 51-52, 129, 131-135, 147, 152-153.

FedEx Ground Package Systems, Inc. v. Route Consultant, Inc., a published Sixth Circuit decision arising from the Middle District of Tennessee, illustrates the Rule 12 importance of reading a challenged publication in context. 97 F.4th 444, 453-55 (6th Cir. 2024). There, the court explained that statements appearing problematic in isolation took on a different meaning when the surrounding publication was considered, producing a mismatch between the statements' contextual meaning and the complaint's theory. Id. Snow relies on FedEx Ground for its Rule 12 and source-document reasoning, not as a substitute for Tennessee defamation law.

Exhibit A contains a limited set of timestamped excerpts for the Court's convenience. The original audiovisual publication controls if any transcription discrepancy exists. Snow's jurisdictional Declaration remains offered only for Rule 12(b)(2); it is not the basis for resolving Rule 12(b)(6). See Fed. R. Civ. P. 12(d).

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER SNOW

### A. General Jurisdiction Is Unavailable

For an individual, the paradigm forum for general jurisdiction is the individual's domicile. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). The Complaint alleges that Snow is a Washington resident, Compl. ¶ 8, and his Declaration states that he resides and is domiciled in Washington and has never been domiciled in Tennessee. The Complaint alleges no facts making Snow 'at home' in Tennessee. General jurisdiction is therefore unavailable.

## B. Carbone Requires a Defendant-Specific, Snow-Created Connection With Tennessee

Carbone is the Sixth Circuit's most recent published authority directly addressing personal jurisdiction in an online-defamation setting. It begins with the rule that the plaintiff bears the burden to establish personal jurisdiction over 'each defendant' and later emphasizes that the relevant connection must be created by the defendants themselves. 140 F.4th at 808-09, 812-13. In Carbone, allegedly defamatory statements passed through Ohio-based servers, but that technical connection was insufficient because the defendants did not themselves create the Ohio connection and Ohio was not the focal point of the story or harm. Id. at 811-13.

The same defendant-specific principle controls here. The Complaint alleges that Snow communicated with Owens and participated remotely in a podcast. It does not allege that Snow traveled to Tennessee, entered a Tennessee contract, operated a Tennessee business, targeted Tennessee residents, investigated Tennessee conduct, or sought a Tennessee-specific governmental, employment, commercial, or legal result. The alleged observation occurred in Arizona, Snow spoke from Washington, and Plaintiff is alleged to be a Texas citizen. Tennessee's principal connection arises from another participant's alleged location or media operation, not from forum contacts independently created by Snow.

## C. The Online Publication Was Not Alleged To Be Tennessee-Focused

Posting or participating in online speech does not, without more, create jurisdiction wherever the speech can be accessed. Blessing, 988 F.3d at 905 & n.15. The relevant question is whether the defendant intentionally directed the challenged activity at the forum. Id. at 905-07. In Reynolds v. International Amateur Athletic Federation, the Sixth Circuit rejected Ohio jurisdiction over allegedly defamatory statements because the publication and underlying controversy were not focused on Ohio, even though the plaintiff lived there and felt injury there. 23 F.3d 1110, 1119-20 (6th Cir. 1994).

6

The Complaint does not allege that Snow selected a Tennessee audience, used Tennessee sources, focused on Tennessee events, urged action in Tennessee, or controlled the podcast's Tennessee-related production or distribution. That absence of forum-focused conduct distinguishes this case from Calder v. Jones, where California was the focal point of the article, its sources, circulation, plaintiff's career, and injury. 465 U.S. 783, 788-90 (1984).

**D. Johnson v. Griffin Is Distinguishable**

In Johnson, the Sixth Circuit found Tennessee jurisdiction where the defendant tagged and directly communicated with a Tennessee company, criticized conduct that occurred in Tennessee, urged a Tennessee employment consequence, and allegedly caused that consequence in Tennessee. 85 F.4th at 433-36. The court emphasized that merely broadcasting to followers nationwide, coupled with knowledge that Tennessee residents might read the speech, would not have been enough. Id. at 435.

Carbone later described Johnson as a case in which the challenged speech used a Tennessee source, attacked a Tennessee resident for Tennessee conduct, expressly referred to Tennessee, identified a Tennessee employer, and allegedly produced consequences there. Carbone, 140 F.4th at 811-12. None of those Tennessee-centered features is pleaded against Snow. Snow is not alleged to have addressed a Tennessee employer or regulator, demanded Tennessee action, described Tennessee conduct, or sought injury in Tennessee. Johnson therefore marks the line the Complaint does not cross.

**E. Neal and Similar Communication Cases Do Not Establish Jurisdiction Here**

The Sixth Circuit has recognized that telephone calls and other communications into a forum may support jurisdiction when the defendant purposefully directs the communications into the forum and those communications form the heart of the claim. Intera, 428 F.3d at 616-18. In Neal v. Janssen, for example, the defendant engaged in an ongoing business relationship and directed

fraudulent communications into Tennessee that induced Tennessee plaintiffs to act there. 270 F.3d 328, 332-33 (6th Cir. 2001).

The Complaint does not allege comparable Tennessee-centered conduct by Snow. It alleges a source conversation and remote interview concerning events outside Tennessee, without a Tennessee target or requested Tennessee consequence. The fact that another participant may have been located in Tennessee does not alone convert the alleged publication into deliberate exploitation of the Tennessee forum. See Walden, 571 U.S. at 286; Calphalon Corp. v. Rowlette, 228 F.3d 718, 722-23 (6th Cir. 2000).

**F. The Conspiracy Label Cannot Replace Constitutionally Sufficient Contacts**
Plaintiff alleges, on information and belief, that Snow and Owens formed a conspiracy during their telephone call. Compl. ¶¶ 36, 142. But due process remains defendant-specific. Carbone, 140 F.4th at 808-09; Walden, 571 U.S. at 284-86. Even assuming a conspiracy theory of jurisdiction were legally available, the Complaint would still need to plausibly plead both a conspiracy and constitutionally sufficient forum-connected conduct attributable to Snow. As discussed below, it pleads no specific words of agreement, shared unlawful objective, coordinated plan, or agreement to publish a known falsehood. The conclusory conspiracy allegation cannot supply the missing minimum contacts.

**G. The Court Need Not Determine Who Was Present at Fort Huachuca to Decide Personal Jurisdiction**
The threshold jurisdictional question does not require the Court to decide whether Plaintiff was physically present at Fort Huachuca on September 9, 2025. Rule 12(b)(2) asks whether Snow purposefully created constitutionally sufficient suit-related contacts with Tennessee. The alleged observation itself occurred in Arizona. Whether the person Snow observed ultimately proves to have been Plaintiff is a merits question and does not create or eliminate Tennessee contacts.

For the same reason, merits discovery directed toward proving or disproving the Arizona identification is not necessary to determine whether Tennessee may constitutionally exercise jurisdiction over Snow. If the Court concludes that jurisdictional discovery is warranted, Snow respectfully requests that it be confined to Snow's own alleged suit-related contacts with Tennessee and that merits discovery concerning the underlying Arizona identification be deferred until personal jurisdiction is resolved.

## H. Service Proceedings in Washington Do Not Supply Tennessee Contacts

Plaintiff's efforts to serve Snow in Washington and the completed service proceedings do not establish purposeful availment of Tennessee. Service of process concerns notice and the means by which a defendant is brought before the Court; specific personal jurisdiction must still arise from Snow's own suit-related contacts with Tennessee. See Carbone, 140 F.4th at 808-13; Walden, 571 U.S. at 284-86. Those collateral service proceedings do not create Tennessee contacts and need not be resolved to decide Rule 12(b)(2).

## I. Dismissal for Lack of Personal Jurisdiction Must Be Without Prejudice

If the Court concludes that personal jurisdiction is absent, dismissal should be without prejudice because a court lacking jurisdiction cannot adjudicate the merits. Intera, 428 F.3d at 620-21; Fed. R. Civ. P. 41(b).

## V. THE COMPLAINT DOES NOT PLAUSIBLY STATE A DEFAMATION CLAIM AGAINST SNOW

### A. Tennessee Requires a Defendant-Specific Publication, Defamatory Meaning, Fault, and Injury

Under Tennessee law, a prima facie defamation claim requires publication of a statement with knowledge that it was false and defaming, reckless disregard for its truth, or negligence in failing to ascertain the truth. Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). The communication must be judged in context and as a person of ordinary intelligence would

understand it; whether it is capable of defamatory meaning is a question of law. Revis, 31 S.W.3d at 253. There is no categorical First Amendment exemption merely because a speaker uses words of opinion or belief if the statement reasonably implies a provably false fact. Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-21 (1990).

Tennessee also recognizes that a publication may convey a defamatory implication through context, omission, or juxtaposition. See Memphis Publ'g Co. v. Nichols, 569 S.W.2d 412, 420 (Tenn. 1978); Loftis, 2018 WL 1895842, at *5; SmileDirectClub, 708 S.W.3d at 573, 577. That doctrine does not relieve Plaintiff of identifying a false and defamatory meaning actually conveyed by Snow's own publication. To the contrary, an implication claim makes the full publication and its limiting context especially important.

**B. Snow Does Not Concede Falsity or Plaintiff's Alleged Absence From Fort Huachuca**

For purposes of Rule 12(b)(6), Snow accepts properly pleaded allegations only to the extent required by the governing standard. Snow does not concede Plaintiff's allegation that Plaintiff was absent from Fort Huachuca on September 9, 2025; does not concede that Snow's identification was false; and expressly preserves defenses based upon truth, substantial truth, context, fault, causation, and the circumstances surrounding Snow's observation. The Court need not decide those disputed merits facts to determine whether the Complaint plausibly pleads a legally sufficient claim against Snow.

**C. Episode 282 Does Not Match the Complaint's Material Characterization of Snow's Words**

The most important defect is not merely that the Complaint paraphrases. Several paraphrases materially broaden the meaning of Snow's recorded statements. The following comparisons identify the principal mismatches without asking the Court to determine whether the identification ultimately was correct.

1. Complaint ¶¶ 129, 131, 147, and 153 characterize the publication as Snow saying that Harpole himself 'definitely walked past' him. In the recorded exchange, Snow first acknowledges the possibility that the person was not Harpole and describes a possible look-alike; he then says that a person matching Harpole's mannerisms and physical characteristics definitely walked past him. The Complaint's phrasing changes the referent and removes the disclosed uncertainty about identity.

2. The Complaint relies on Snow's stated 95-to-99-percent confidence. The recorded exchange shows that the percentage was requested only after Owens expressly stated that she could not confirm the identity and discussed possible look-alike explanations. A quantified confidence level following disclosed uncertainty is materially different from an unqualified assertion of absolute identification.

3. Complaint ¶ 147 describes Snow as seeing Harpole leave a 'top brass' military meeting. Episode 282 reflects Snow's description of observing high-ranking persons and a meeting, while the promotional phrase is attributable to Owens's framing rather than Snow's quoted wording. Plaintiff cannot reassign promotional language to Snow when evaluating Snow-specific publication and fault.

4. Complaint ¶¶ 132-133 allege that Snow's words imply that Harpole had foreknowledge of Kirk's death and participated in planning, execution, or cover-up. In the same publication Snow states that he did not know what would occur during the following twenty-four hours. That express limitation is part of the publication and must be considered when Plaintiff relies on an implication theory.

5. Complaint ¶ 152 characterizes Snow as publishing that Harpole attended a high-level meeting as part of a plot to assassinate Charlie Kirk. Episode 282 records Snow's sighting and

identification opinion, but not a statement by Snow that Harpole attended an assassination-planning meeting. Owens later supplies her own analysis after Snow has left the program. Collective pleading cannot turn another speaker's later conclusion into Snow's own statement.

**D. Full Context Controls; Plaintiff Cannot Create a Snow-Specific Defamatory Meaning by Removing Qualifications or Reassigning Another Speaker's Words**

Revis requires the publication to be considered in context and as a person of ordinary intelligence would understand it. 31 S.W.3d at 253. Where Plaintiff itself pleads that Snow's words 'taken as a whole' conveyed an implication, Compl. ¶ 133, it cannot plausibly ask the Court to omit the very sentences that qualify the identification or narrow the inference. Owens's statement that she could not confirm the identity and her caution against unwarranted extrapolation are part of the exchange heard by the audience. They do not become Snow's statements, but they are relevant context when Plaintiff claims the joint exchange conveyed a particular meaning.

FedEx Ground is instructive at the Rule 12 stage because the Sixth Circuit rejected a claim that depended on isolating language from the publication where surrounding context exposed a mismatch between the complaint's theory and the meaning actually conveyed. 97 F.4th at 453-55. Masson supplies a related, narrower principle: not every inaccuracy or paraphrase is material; the relevant question is whether the change materially alters the meaning conveyed. 501 U.S. at 516-17. Snow does not cite Masson for a verbatim-quotation rule. He cites it because changing a qualified identification into an absolute identification materially increases the certainty attributed to the speaker.

## E. The Complaint Improperly Attributes Owens's Broader Narrative to Snow

The Complaint attributes the broader accusations of assassination conspiracy, murder planning, and foreknowledge principally to Owens's statements, titles, framing, and later publications. See, e.g., Compl. ¶¶ 36-58, 59-124. Episode 282 reinforces the distinction: Snow gives an eyewitness account and identification opinion with disclosed uncertainty; Owens supplies independent analysis and later, after Snow has signed off, states her own belief concerning government involvement and a cover-up.

A complaint may plead contextual implication, but it must plausibly connect the implication to the particular defendant. Iqbal, 556 U.S. at 678-79. Collective allegations do not permit an automatic inference that every participant adopted every title, implication, or editorial conclusion. Boxill, 935 F.3d at 518. The Complaint does not plead concrete facts showing that Snow selected the episode title or thumbnail, controlled editing, directed later repetition, approved Owens's independent conclusions, or agreed that his identification would be presented as proof that Plaintiff participated in murder.

## F. The December 8 Private Call Must Be Kept Distinct From the Recorded December 18 Publication

Paragraphs 127-128 and part of paragraph 153 allege statements arising from the December 8 private call, including paraphrases about an 'operation' and 'final meetings.' Those phrases do not appear as Snow's Episode 282 statements. But the absence of those phrases from Episode 282 does not itself prove what was said during the private December 8 call. The Court should therefore avoid treating the recorded December 18 publication as if it authenticated or supplied the wording of a separate unrecorded conversation.

The private-call allegations remain subject to Rule 8 and Iqbal. Plaintiff must plead facts showing what actionable statement Snow made, what false and defamatory meaning it conveyed,

13

the required fault as to Snow, and injury caused by that statement. To the extent the Complaint uses paraphrases of the private call and then merges them with Episode 282 and Owens's later publications, the Court should require defendant-specific allegations rather than permit collective narrative to substitute for Snow's own words and state of mind.

**G. The Complaint Does Not Plausibly Plead Defendant-Specific Fault**

The Complaint's own allegations support application of the actual-malice standard. It alleges Plaintiff's prominent role in the security operation, the resulting national public controversy, and Plaintiff's subsequent public interviews addressing that controversy. See Compl. ¶¶ 4, 21-22, 28-29. Those pleaded facts support treating Plaintiff as at least a limited-purpose public figure for the controversy. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974); Charles v. McQueen, 693 S.W.3d 262, 274, 277-79 (Tenn. 2024). At minimum, if the Court determines Plaintiff assumed that status, negligence cannot support liability and Plaintiff must plausibly allege actual malice as to Snow's own statements. See New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Gertz, 418 U.S. at 347. Reckless disregard requires facts supporting a reasonable inference that Snow in fact entertained serious doubts about the truth. St. Amant v. Thompson, 390 U.S. 727, 731 (1968). If the Court concludes Plaintiff is a private figure, Tennessee may apply negligence, but liability still requires defendant-specific fault. Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999).

The detailed allegations about travel records, receipt of contrary documents, continuing publication after notice, titles, and monetization are directed principally at Owens. Compl. ¶¶ 42, 53, 55-56, 94. The Complaint does not comparably allege that Snow possessed Plaintiff's travel records before speaking, knew the identification was impossible, actually doubted his observation, or fabricated the encounter. And the recorded publication discloses the basis and uncertainty of Snow's identification rather than concealing them. Alleged falsity does not by

itself plead the required fault. The Complaint must allege facts supporting a reasonable inference about Snow's state of mind, not merely repeat the labels 'negligence' and 'actual malice.' See Iqbal, 556 U.S. at 678-79.

## H. The Complaint Does Not Plausibly Connect Campaign-Wide Damages to Snow's Own Publication

The Complaint itself describes criticism from numerous commentators and widespread social-media reaction arising from the broader controversy. See Compl. ¶¶ 22, 77, 80. Yet it does not identify a particular client, contract, employment opportunity, or other legally cognizable injury lost because of a statement made by Snow rather than because of independent statements and conduct by others. That gap is especially significant where Plaintiff seeks campaign-wide damages from a defendant alleged to have participated in only the limited publications identified above. This is not an argument that damages must be calculated precisely at the pleading stage. It is an argument that Rule 8 requires a plausible causal connection between this Defendant's allegedly actionable publication and the injury for which Plaintiff seeks to hold him liable.

## VI. THE CIVIL-CONSPIRACY CLAIM FAILS

## A. Tennessee Requires a Knowing Common Design, Concerted Action, an Overt Act, and Injury

Tennessee defines civil conspiracy as a combination of two or more persons who, each having intent and knowledge of the other's intent, act in concert to accomplish an unlawful purpose or a lawful purpose by unlawful means, resulting in damage. Trau-Med, 71 S.W.3d at 703. The claim requires a common design, concerted action, an overt act, and resulting injury, and it must be pleaded with some degree of specificity. Kincaid, 221 S.W.3d at 38. Conclusory allegations unsupported by material facts are insufficient. Id.

15

### B. The Complaint Pleads Communication and an Interview, Not a Plausible Unlawful Agreement

Count V alleges that Snow and Owens reached an agreement during a December 8 telephone call. Compl. ¶¶ 36, 142. But the Complaint pleads no words of agreement, agreed defamatory statement, shared knowledge of falsity, division of roles, coordinated publication plan, or facts showing that Snow agreed to the titles, framing, repetition, or later statements attributed to Owens. The pleaded facts - communication by a source, interview coordination, and participation in an interview - are at least equally consistent with lawful source-publisher interaction. Under Twombly, facts that show only the possibility of agreement do not plausibly plead conspiracy. 550 U.S. at 556-57.

### C. Episode 282 Does Not Plausibly Supply the Missing Common Design

The recorded interview does not cure the pleading gap. It shows Snow disclosing uncertainty in his identification, Owens saying she cannot confirm it, Owens warning against unwarranted extrapolation, and Snow later disclaiming knowledge of what would occur the next day. Those exchanges do not plausibly show an agreed plan by Snow and Owens to publish the specific proposition that Harpole knowingly participated in an assassination plot. The Court need not infer unlawful agreement from conduct that is at least equally consistent with a source presenting an observation and a host independently analyzing it. See Twombly, 550 U.S. at 556-57. Again, Episode 282 does not establish what occurred during the separate December 8 private call. But the Complaint still must plead a plausible agreement rather than infer one merely from later participation in an interview, and the actual recorded interview does not supply the missing specificity.

16

### D. Episode 282 Does Not Show That Snow's Testimony Was Procured by a Promised Fundraiser

Nothing in the publication supports an inference that a fundraiser was promised before or in exchange for Snow's testimony. The first on-air fundraiser reference occurs at approximately 1:07:02, after Snow's substantive testimony and during the closing exchange, when Owens states that she is going to put together a fundraiser for Snow 'imminently.' Snow then signs off at approximately 1:07:48. After Snow is off the program, Owens separately tells the audience at approximately 1:10:07-1:10:43 that she will organize a GiveSendGo and hopes it can assist with legal costs. See Ex. A.

This chronology does not establish what may have been said off air before the interview, and Snow does not offer Episode 282 for that purpose. It does show that the publication on which Plaintiff relies supplies no on-air negotiation, promise, or exchange of financial benefit preceding Snow's substantive testimony. An inference that Snow's testimony was purchased therefore is not supplied by Episode 282 and cannot substitute for pleaded facts showing a knowing unlawful agreement. See Twombly, 550 U.S. at 556-57.

### E. The Negligence Theory Cannot Supply the Required Knowing Agreement

Plaintiff also pleads the alleged underlying defamation alternatively in negligence. See Compl. ¶ 134. Civil conspiracy, however, requires intent and knowledge of the other alleged conspirator's intent. Trau-Med, 71 S.W.3d at 703; Kincaid, 221 S.W.3d at 38-39. A negligence theory therefore cannot itself supply the knowing common design required to plead a conspiracy.

### F. Civil Conspiracy Is Derivative and Cannot Expand Liability for Independent Acts of Others

Civil conspiracy is not independently actionable without an underlying predicate tort. Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 179-80 (Tenn. Ct. App. 2007). Because the Complaint does not plausibly plead actionable defamation and fault by Snow or a

specific agreement to commit that tort, the conspiracy claim fails. A conclusory conspiracy label cannot make Snow liable for every statement, title, editorial decision, repetition, or monetization choice independently made by another Defendant.

## VII. CONCLUSION

The Court should dismiss all claims against Snow without prejudice under Rule 12(b)(2). The Complaint does not establish a defendant-created, Tennessee-focused connection sufficient under Carbone, Walden, Blessing, and Johnson. The Court need not decide who was physically present at Fort Huachuca to resolve that threshold jurisdictional issue. The completed Washington service proceedings do not alter that constitutional analysis.

If the Court reaches the alternative merits arguments, it should dismiss Count IV, Count V, and any other claim expressly asserted against Snow under Rule 12(b)(6), with prejudice only to the extent amendment would be futile. Snow does not concede falsity or Plaintiff's alleged absence from Fort Huachuca and preserves all merits defenses. If jurisdictional discovery is ordered, Snow respectfully requests that it be limited to Snow's own Tennessee contacts and that merits discovery concerning the Arizona identification be deferred until jurisdiction is resolved.

Respectfully submitted,

_____
Mitchell H. Snow
Defendant, Pro Se
9315 Welsh Dr.
Pasco, WA 99301
Telephone: 509-412-4498
Email: Justice4Nate@PM.ME

**CERTIFICATE OF SERVICE**
I certify that on ___10 August___, 2026, I submitted the foregoing through the Court's Pro Se Electronic Filing Portal for docketing. Upon docketing, the Notice of Electronic Filing generated by CM/ECF constitutes service on registered Electronic Filing Users under M.D. Tenn. L.R. 5.02(a). Any person not served electronically will be served as required by Federal Rule of Civil Procedure 5 and M.D. Tenn. L.R. 5.01.

_____
Mitchell H. Snow

18

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BRIAN HARPOLE,
  Plaintiff,

v.

CANDACE OWENS,
CANDACE OWENS LLC,
GEORGETOM, INC., and
MITCHELL SNOW,
  Defendants.

JURY DEMAND

Civil Action No. 3:26-cv-00556
District Judge: Unassigned
Magistrate Judge: Unassigned

## CERTIFICATE / PROOF OF SERVICE

### MEMORANDUM IN SUPPORT OF DEFENDANT MITCHELL H. SNOW'S MOTION TO DISMISS

I certify that on ___ *16 Aucos* ___, 2026, after the Clerk docketed the document identified below, the Court's CM/ECF system transmitted a Notice of Electronic Filing (NEF) to the registered counsel of record listed below. Receipt of the NEF constitutes electronic service under M.D. Tenn. L.R. 5.02(a) and Fed. R. Civ. P. 5(b)(2)(E).

**Document served:** Memorandum in Support of Defendant Mitchell H. Snow's Motion to Dismiss

**CM/ECF Document No. (if assigned):** _____

**Method of service:** CM/ECF Notice of Electronic Filing (electronic service)

**Date of service:** ___ *16 Aucos* ___, 2026

**Counsel served for Plaintiff Brian Harpole:**
    Tara L. Swafford - tara@swaffordlawfirm.com
    Elizabeth G. Hart - betsy@swaffordlawfirm.com
    Jacob W. Roth - jroth@contarinoroth.com
    Matthew Sarelson - msarelson@dhillonlaw.com

**Counsel served for Defendants Candace Owens, Candace Owens LLC, and GeorgeTom, Inc.:**
    Daniel A. Horwitz - daniel@horwitz.law
    Robert A. Peal - rpeal@simsfunk.com
    Megan Catherine Chambers - mchambers@simsfunk.com

I have not learned that the electronic service failed or that the NEF did not reach any counsel listed above.

_____

Mitchell H. Snow, Defendant Pro Se
9315 Welsh Dr.
Pasco, WA 99301
Telephone: 509-412-4498
Email: Justice4Nate@PM.ME