**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| BRIAN HARPOLE,<br>Plaintiff,<br><br>v.<br><br>CANDACE OWENS, CANDACE OWENS LLC,<br>GEORGETOM, INC., and MITCHELL SNOW,<br>Defendants. | Civil Action No. 3:26-cv-00556<br><br>District Judge: None<br>Magistrate Judge: None<br><br>JURY DEMAND |

**DEFENDANT MITCHELL H. SNOW'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Mitchell H. Snow, appearing pro se, respectfully replies to Plaintiff Brian Harpole's Response in Opposition (ECF No. 37). Plaintiff's own Opposition confirms that the dispute he describes between himself and Candace Owens predated Snow's first alleged contact with Owens. The issue is whether Snow's limited, out-of-state source communications and one remote interview create personal jurisdiction in Tennessee or plausibly make Snow a co-conspirator in Owens's broader editorial campaign. They do not.

**I. PLAINTIFF STILL HAS NOT SHOWN PERSONAL JURISDICTION OVER SNOW.**

**A. Owens's Tennessee location cannot substitute for Snow-created Tennessee contacts.**

Plaintiff repeatedly characterizes the December 8 call as a Tennessee contact deliberately initiated by Snow. Opp. 1-2, 5-6. Snow denies that jurisdictional characterization. His first contact with Owens occurred when Owens contacted him after a member of her audience referred Snow as a possible source; Snow did not seek out Owens or request a podcast appearance. The later remote interview likewise occurred at Owens's request. Supp. Decl. ¶¶ 7-8. Specific jurisdiction turns on the defendant's own suit-related conduct and its substantial connection with the forum. Walden v. Fiore, 571 U.S. 277, 284-86 (2014); Johnson v. Griffin, 85 F.4th 429, 432-35 (6th Cir. 2023); Carbone v. Kaal, 140 F.4th 805, 808-13 (6th Cir. 2025). Here, Plaintiff is alleged to be a Texas citizen, Snow spoke from Washington, and the disputed

observation concerned Arizona. Snow did not target a Tennessee audience, seek action from a Tennessee employer or decisionmaker, or seek any Tennessee-specific governmental, commercial, employment, or legal consequence. ECF No. 34 ¶¶ 3-15. Although Snow's later participation remains part of the jurisdictional inquiry, the actual initiation of contact directly undercuts Plaintiff's portrayal of Tennessee as Snow's deliberately selected means of publication.

Neal v. Janssen, 270 F.3d 328 (6th Cir. 2001), does not eliminate that forum-focused inquiry. Neal involved allegedly fraudulent communications directed into Tennessee that themselves induced the Tennessee plaintiffs' injury. Id. at 332-33. Johnson likewise involved conduct deliberately aimed at Tennessee, including direct contact with a Tennessee employer to obtain a Tennessee employment consequence. 85 F.4th at 433-35. Plaintiff's theory here would instead make the location of a national media host dispositive whenever an out-of-state source communicates with that host. Due process remains defendant-specific. Walden, 571 U.S. at 284-86; Carbone, 140 F.4th at 812-13.

**B. Plaintiff's own chronology shows a preexisting Owens-Harpole dispute, not a Snow-created campaign.**

The Opposition alleges that Owens was already publishing accusations concerning Harpole before Snow's first communication with her. Opp. 1-3. Snow, however, did not know of any such dispute and did not seek out Owens. Before Owens first discussed Snow's own circumstances on Episode 277 on December 9, 2025, Snow had never watched an episode of Owens's program; he had never met Owens or Harpole and had no preexisting relationship with either. His first contact with Owens occurred because Owens contacted him after an audience referral. Supp. Decl. ¶¶ 3-9. Whatever dispute or perceived rivalry Plaintiff alleges between himself and Owens therefore did not originate with Snow, and Snow could not knowingly have joined a preexisting campaign of which he was unaware. Snow's alleged role begins later:

responding to an unsolicited source inquiry and participating in one requested remote interview. Rule 8 and due process do not permit a preexisting dispute between other parties to be converted into jurisdiction or liability against Snow merely because Owens later used, framed, repeated, or monetized a source's information. See Boxill v. O'Grady, 935 F.3d 510, 518 (6th Cir. 2019).

**C. Conspiracy jurisdiction does not cure the missing forum connection.**

Even assuming Tennessee conspiracy jurisdiction applies, Plaintiff must sufficiently allege an actual agreement. Chenault v. Walker, 36 S.W.3d 45, 53-56 (Tenn. 2001). First Community Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 395-400 (Tenn. 2015), later rejected a prima facie conspiracy-jurisdiction showing where the allegations did little more than describe relationships and created only suspicion or conjecture rather than an agreement alleged with reasonable particularity. Here, Plaintiff identifies no agreed defamatory proposition, words of agreement, shared knowledge of falsity, or facts showing that Snow agreed to Owens's later titles, framing, repetition, or conclusions. Communication between a source and publisher, followed by an interview, is at least equally consistent with lawful conduct. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007).

The fundraiser does not supply the missing agreement. Episode 282 places Owens's first on-air fundraiser announcement after Snow's substantive interview; Snow signs off shortly thereafter, and Owens expands the announcement after he leaves. ECF No. 33-1. Plaintiff's characterization of the fundraiser as evidence of a preexisting financial quid pro quo is also inconsistent with the chronology set out in Snow's Supplemental Declaration: the following day Snow rejected accepting the donations because he feared that receiving money connected to his appearance could create the impression that he was profiting from his account; Snow has never received the proceeds; and after this litigation later created legal expenses, Snow sought control of the fundraiser but, once the immediate opportunity to retain counsel for pending deadlines had

effectively passed, requested that donations be returned where possible and that residual funds not personally benefit him. Supp. Decl. ¶¶ 10-15. These events do not establish the contents of the December 8 call, but they materially weaken Plaintiff's inference that the December 18 fundraiser was consideration for, or evidence of, a prior agreement to defame Plaintiff.

**D. The speculation that Snow may not have been at Fort Huachuca is a merits distraction, not a jurisdictional fact.**

Plaintiff states in a footnote that Snow 'likely never visited' Fort Huachuca. Opp. 2 n.1. That assertion is not a supported jurisdictional fact and does not create a Tennessee contact. Snow need not prove in this Rule 12(b)(2) reply that he was at Fort Huachuca, nor prove that Harpole was there. If Plaintiff maintains that Harpole was not present, Snow does not ask the Court to decide otherwise in resolving personal jurisdiction. The threshold question is whether Plaintiff's allegations establish Tennessee jurisdiction over Snow, not whether either party can presently prove the ultimate Arizona facts. If discovery is permitted, it should therefore be confined to Snow's own suit-related Tennessee contacts and any genuinely jurisdictional conspiracy facts, not converted into merits discovery about who was physically present in Arizona. See First Cmty. Bank, 489 S.W.3d at 407-08; Theunissen v. Matthews, 935 F.2d 1454, 1458, 1465 (6th Cir. 1991).

**II. THE OPPOSITION DOES NOT CURE THE RULE 12(b)(6) DEFECTS.**

**A. Snow's recorded statement was a qualified identification, not an accusation that Harpole participated in murder.**

Plaintiff's implication theory must be measured against the publication actually made. Episode 282 records Snow expressly acknowledging possible mistaken identity ('maybe it's not him'), describing a person whose characteristics and mannerisms matched Harpole, and then giving a high confidence estimate only after Owens herself discussed look-alike possibilities and said she could not independently confirm the identity. ECF No. 33-1. Snow also stated that he did not know what would occur during the following twenty-four hours, and he left before

Owens later stated broader conclusions concerning government involvement and a cover-up. Id. Plaintiff may plead defamation by implication, but audience reactions cannot erase express qualifications or transform another speaker's later analysis into Snow's own assertion. See FedEx Ground Package Sys., Inc. v. Route Consultant, Inc., 97 F.4th 444, 453-55 (6th Cir. 2024); Boxill, 935 F.3d at 518.

Nor does Plaintiff's allegation that Harpole was elsewhere establish that Snow knowingly fabricated his account. Falsity and fault are distinct. A mistaken identification is not the same as knowledge of falsity, and the recorded publication itself discloses uncertainty. Plaintiff's unsupported footnote attacking whether Snow was at the base cannot substitute for well-pleaded Snow-specific facts concerning his subjective knowledge. See Charles v. McQueen, 693 S.W.3d 262, 280-82 (Tenn. 2024).

**B. The conspiracy and damages theories remain defendant-specific.**

Plaintiff seeks to use conspiracy to attribute Owens's broader publications and campaign-wide injuries to Snow. But Tennessee conspiracy requires a knowing common design and concerted action, not mere association. Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). Plaintiff's own Opposition describes Owens as pursuing accusations concerning Harpole before Snow entered the picture, yet identifies no plausible facts showing that Snow adopted Owens's broader objectives or agreed to her later editorial decisions. Without that agreement, Snow cannot be made responsible for every title, implication, repetition, monetization choice, or injury allegedly caused by others.

**III. CONCLUSION**

For these reasons, Snow respectfully requests dismissal of all claims against him without prejudice under Rule 12(b)(2). If the Court reaches the alternative merits grounds, Snow requests dismissal of Count IV, Count V, and any other claim expressly asserted against him under Rule

12(b)(6), with prejudice only to the extent amendment would be futile. If jurisdictional discovery is ordered, Snow requests that it be narrowly limited to his own alleged suit-related Tennessee contacts and any genuinely jurisdictional conspiracy issue, with merits discovery deferred until personal jurisdiction is resolved.

Respectfully submitted,

__________________________________

Mitchell H. Snow
Defendant, Pro Se
9315 Welsh Dr., Pasco, WA 99301
Telephone: 509-412-4498
Email: Justice4Nate@PM.ME

**CERTIFICATE OF SERVICE**

I certify that on 31 August, 2026, I submitted the foregoing through the Court's Pro Se Electronic Filing Portal. Upon docketing, CM/ECF will serve registered counsel; any party not served electronically will be served as required by Federal Rule of Civil Procedure 5.

Mitchell H. Snow