**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **BRIAN HARPOLE,**<br>Plaintiff,<br><br>v.<br><br>CANDACE OWENS,<br>CANDACE OWENS LLC,<br>GEORGETOM, INC., and<br>MITCHELL SNOW,<br>Defendants. | Civil Action No. 3:26-cv-00556<br>District Judge: Unassigned<br>Magistrate Judge: Unassigned<br><br>**JURY DEMAND** |

**DEFENDANT MITCHELL H. SNOW'S MOTION AND MEMORANDUM OF LAW FOR DISMISSAL UNDER THE TENNESSEE PUBLIC PARTICIPATION ACT**

**(CONDITIONALLY AND WITHOUT WAIVING RULE 12(b)(2) OBJECTION)**

Defendant Mitchell H. Snow, appearing pro se, moves under the Tennessee Public Participation Act ("TPPA"), Tenn. Code Ann. §§ 20-17-101 through -110, for dismissal with prejudice of Counts IV and V as asserted against him. This filing is a statutory "petition" under Tenn. Code Ann. § 20-17-104 and a motion under M.D. Tenn. L.R. 7.01.

This filing is expressly conditional. Snow does not concede that the TPPA's special dismissal procedure applies in federal court, and he acknowledges that decisions from this District—including a 2026 decision—have held that it does not. Snow raises the issue transparently to preserve the substantive protections Tennessee created for claims targeting protected participation. He asks the Court to apply the TPPA only to the extent the Court determines that it can coexist with the Federal Rules of Civil Procedure.

Nor does this filing withdraw, modify, or waive Snow's pending Rule 12(b)(2) objection. The Court should decide personal jurisdiction first and dismiss Snow without reaching the merits if jurisdiction is lacking. See Mot., ECF No. 32; Mem., ECF No. 33; Decl., ECF No. 34.

Snow was served on July 20, 2026. This Motion is filed within the sixty-calendar-day period in Tenn. Code Ann. § 20-17-104(a). If the Court calculates that period differently, Snow alternatively requests leave under § 20-17-104(b) to file at this time. The issue has been raised while Snow's threshold Rule 12 motion remains pending, before merits discovery, and without prejudice to Plaintiff's ability to respond.

## I. QUESTIONS PRESENTED

1. Whether Counts IV and V are based on, relate to, or respond to Snow's exercise of the right of free speech concerning matters of public concern.
2. Whether Plaintiff can establish a prima facie case against Snow from the communications actually attributable to Snow, rather than from paraphrases that remove qualifications, change referents, combine speakers, and add an assassination-plot conclusion Snow did not state.
3. Whether Plaintiff can establish a Snow-specific unlawful agreement supporting civil conspiracy, where the Complaint itself alleges that Owens contacted Snow, the recorded interview discloses uncertainty and nonconfirmation, and Owens supplied broader conclusions of her own.
4. Whether, notwithstanding contrary decisions from this District, any TPPA remedy may be applied consistently with Rules 12 and 56 and the Rules Enabling Act.

## II. RELEVANT ALLEGATIONS AND RECORD

Plaintiff alleges that Snow is a Washington resident. Compl. ¶ 8. The observation underlying the disputed publication occurred at Fort Huachuca, Arizona. Id. ¶¶ 36-42. Plaintiff is alleged to be a Texas citizen. Id. ¶ 7. The Complaint identifies a December 8, 2025 telephone call and Snow's

remote appearance on Episode 282 on December 18, 2025 as the communications underlying the claims against Snow. Id. ¶¶ 126-50.

The Complaint's own chronology alleges that a third party directed Owens to Snow and that Owens then contacted him. Id. ¶¶ 127, 140-41. It further alleges that Owens later contacted Snow to invite him to appear on the program. Id. ¶ 146. Thus, the pleading itself does not support the later characterization that Snow sought out Owens to join a preexisting campaign against Harpole.

Count IV alleges that Snow published a false narrative that Harpole attended a top-secret Fort Huachuca meeting "as part of a plot to assassinate Charlie Kirk." Id. ¶ 126. The Count attributes to Snow supposed implications of foreknowledge and participation in planning, execution, or cover-up. Id. ¶¶ 132-33. Count V then alleges an agreement between Snow and Owens to profit from that narrative. Id. ¶¶ 140-50.

The Complaint also quotes or paraphrases portions of Episode 282. See id. ¶¶ 129-33, 147. The selected timestamped transcript excerpts are already in the record as ECF No. 33-1. Because Plaintiff's theory depends on the publication's "context" and "overall gist," the Court should consider the words and qualifications appearing in the same publication. See, e.g., Compl. ¶¶ 40, 129-33; Pl.'s Opp. 9-15, ECF No. 37.

## III. THE TPPA FRAMEWORK

The Tennessee General Assembly enacted the TPPA to encourage and safeguard constitutional rights of speech, petition, and association while protecting meritorious claims for demonstrable injury. Tenn. Code Ann. § 20-17-102. The Act defines the exercise of free speech as a constitutionally protected communication made in connection with a matter of public concern. Id. § 20-17-103(3). Matters of public concern include health or safety, community well-being,

government, public figures, marketplace goods or services, political or audiovisual works, and other issues a court determines involve public concern. Id. § 20-17-103(6).

The petitioner first must make a prima facie showing that the legal action is based on, relates to, or responds to protected activity. Id. § 20-17-105(a). The action then "shall" be dismissed unless the responding party establishes a prima facie case for every essential element of the claim. Id. § 20-17-105(b). Dismissal also is required if the petitioner establishes a valid defense. Id. § 20-17-105(c). The Court may consider the pleadings and supporting or opposing affidavits stating admissible evidence. Id. § 20-17-105(d). A dismissal under the Act is with prejudice. Id. § 20-17-105(e).

The Tennessee Supreme Court describes the TPPA as a mechanism for the swift dismissal of nonmeritorious claims targeting protected participation. Charles v. McQueen, 693 S.W.3d 262, 267-68 (Tenn. 2024). The Tennessee Court of Appeals has explained that the prima facie standard demands evidence sufficient to permit a rational factfinder to rule for the responding party if the evidence is credited. SmileDirectClub, Inc. v. NBCUniversal Media, LLC, 708 S.W.3d 556, 570-72 (Tenn. Ct. App. 2024). Labels and conclusions are not evidence.

## IV. THE CLAIMS AGAINST SNOW ARISE FROM PROTECTED SPEECH ON MATTERS OF PUBLIC CONCERN

The TPPA threshold is satisfied from the Complaint itself. Counts IV and V are based on Snow's communications with a media commentator and his participation in an audiovisual work. The subjects include the killing of a nationally prominent political figure at a public event, security at that event, alleged observations on a United States Army installation, and ensuing national public discussion. Those subjects concern safety, community well-being, government, public figures, political works, and audiovisual works within Tenn. Code Ann. § 20-17-103(6).

The relationship between the claims and Snow's speech is direct, not collateral. Count IV seeks defamation liability for the alleged December 8 call and Episode 282. Compl. ¶¶ 126-37. Count V seeks to make the same communications overt acts of an alleged conspiracy. Id. ¶¶ 140-50. Plaintiff's Opposition likewise identifies Snow's communications and podcast participation as the conduct giving rise to his claims. ECF No. 37 at 9-21. Snow therefore has made the prima facie threshold showing required by § 20-17-105(a).

## V. PLAINTIFF'S THEORY MATERIALLY CHANGES SNOW'S ACTUAL WORDS AND THEN STACKS ADDITIONAL INFERENCES ON THE ALTERED VERSION

Snow does not contend that every paraphrase is improper or that Tennessee categorically prohibits defamation by implication. Tennessee recognizes that a publication may convey a defamatory implication through context, omission, or juxtaposition. Memphis Publ'g Co. v. Nichols, 569 S.W.2d 412, 420 (Tenn. 1978); SmileDirectClub, 708 S.W.3d at 573, 577. But the alleged implication still must arise reasonably from the communication actually published, considered in full context as an ordinary listener would understand it. Revis v. McClean, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000).

A plaintiff cannot materially change the certainty, speaker, referent, or substance of the original communication and then treat the altered paraphrase as the defendant's statement. The Supreme Court's materially-altered-meaning analysis is instructive: a paraphrase becomes constitutionally significant when the alteration produces a material change in the meaning conveyed. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991).

### A. The Complaint changes a qualified identification into an unequivocal identification.

At approximately 55:32, Snow expressly raised the possibility of mistaken identity:

> "Maybe it's not him. Maybe he has [a] doppelganger. But somebody with the same mannerisms, same posture, approximate height, haircut, facial appearance, gestures, [and] gait definitely walked past me." ECF No. 33-1 at 55:32-56:13.

The Complaint recasts this as Snow stating that Harpole himself "definitely walked past" him. Compl. ¶¶ 131, 147, 153. That is not a neutral shortening. In context, "definitely" modified the proposition that a person with matching observed characteristics walked past; it did not erase the immediately preceding "maybe it's not him" or the doppelganger possibility. The paraphrase changes both the referent and the degree of certainty.

**B. Snow's confidence estimate was expressly less than certainty.**

Owens then asked: "If you had to put it at a percentage that you saw Brian Harpole what percentage would you put it at?" Snow answered "95" and then "95 to 99." ECF No. 33-1 at 56:13-57:01. A high confidence estimate can be disputed, but it is not the same proposition as one hundred percent certainty. The estimate also followed Snow's express acknowledgement that the person could have been a look-alike. Plaintiff cannot rely on the high end of the estimate while deleting the uncertainty built into the same answer.

**C. The publication told listeners that the identification was not independently confirmed.**

Immediately after the identification discussion, Owens stated: "I obviously can't confirm that you saw who you say you saw." ECF No. 33-1 at 56:13-56:57. She later repeated, "I can't confirm it," discussed doppelgangers, and cautioned against listeners "wrongly extrapolat[ing]" from a sighting. Id. at 58:47-59:42. Those are Owens's statements, not Snow's, but they are part of the context Plaintiff invokes when he claims that the episode "taken as a whole" conveyed an accusation. A listener heard a qualified identification and an express nonconfirmation—not an announcement that Harpole's identity had been established as fact.

**D. Snow did not state that Harpole attended an assassination-planning meeting.**

Count IV alleges that Snow published that Harpole attended a high-level meeting "as part of a plot to assassinate Charlie Kirk." Compl. ¶ 126; see also id. ¶¶ 132-33. Episode 282, however, does not contain a Snow statement that:

- the observed meeting was an assassination-planning meeting;
- Harpole knew that Kirk would be killed;
- Harpole planned, facilitated, or executed the killing;
- Harpole participated in a cover-up; or
- Snow possessed knowledge that any of those propositions was true.

Snow described an observation, circumstances he found unusual, and an attempted later identification. Converting that account into an accusation of participation in murder requires additional premises that Snow did not state.

**E. Snow expressly said he did not know what would happen the next day.**

Later in the same interview, Snow stated:

> "I obviously didn't know what was going to happen the next 24 hours." ECF No. 33-1 at 1:03:25-1:03:57.

That language matters. The alleged implication is not merely absent from Snow's words; the publication contains an express limitation inconsistent with treating his account as a declaration that he knew he had witnessed preparations for an assassination. To obtain Plaintiff's proposed meaning, a listener must disregard the limitation appearing in the publication itself.

**F. Owens's later conclusions cannot automatically be attributed to Snow.**

Snow's interview ended at approximately 1:07:48. Owens thereafter continued alone and, at approximately 1:11:42, expressed her own conclusions concerning government involvement and a cover-up. ECF No. 33-1. Whatever significance those later statements may have as to Owens,

Snow was no longer present and did not speak, adopt, or assent to them. The Complaint must distinguish among Snow's words, Owens's words while he was present, Owens's later independent commentary, editorial titles or thumbnails controlled by others, and Plaintiff's own conclusions. Collective pleading cannot erase those distinctions.

### G. The alleged criminal accusation exists only after a chain of added propositions.

The inferential progression required by Plaintiff's Snow-specific theory is:

> Snow believed, with high but expressly less-than-absolute confidence, that a person he saw at Fort Huachuca was Harpole; therefore the person unquestionably was Harpole; therefore Harpole's presence necessarily concerned Kirk; therefore the meeting concerned Kirk; therefore Harpole knew what would happen the following day; therefore Harpole helped plan, execute, or cover up Kirk's death; and therefore Snow accused Harpole of joining an assassination conspiracy.

The later propositions do not necessarily follow from the first, and several conflict with qualifications in the publication. The issue is not "inference versus no inference." The issue is whether the allegedly actionable meaning was reasonably communicated by Snow's actual words. SmileDirectClub requires examination of the challenged publication and evidence supporting the asserted implication; it does not permit a plaintiff's ultimate characterization to substitute for the publication. 708 S.W.3d at 570-77.

## VI. PLAINTIFF CANNOT ESTABLISH EACH ELEMENT OF A SNOW-SPECIFIC DEFAMATION CLAIM

### A. The publication is not reasonably capable of the Snow-specific accusation pleaded.

A Tennessee defamation plaintiff must identify a false and defamatory statement concerning the plaintiff, publication to a third person, fault, and legally cognizable injury. See Hibdon v. Grabowski, 195 S.W.3d 48, 58, 68 (Tenn. Ct. App. 2005). Whether words are capable of the

asserted defamatory meaning is initially a question of law, assessed from the publication as a whole. Revis, 31 S.W.3d at 253.

Plaintiff's proposed meaning—that Snow accused Harpole of knowingly joining a plot to murder Kirk—is not reasonably derived from Snow's qualified identification when speaker, referent, and surrounding qualifications are preserved. The Complaint instead combines a qualified observation with Owens's separate editorial narrative and Plaintiff's own added premises. That does not establish the Snow-specific communication required by § 20-17-105(b).

**B. A disputed or mistaken identification does not itself establish Snow's fault.**

Plaintiff alleges that travel records place Harpole elsewhere and labels Snow's account fabricated. Compl. ¶¶ 42, 135; ECF No. 37 at 14-16. But the premise "Harpole was not there" does not by itself establish Snow's state of mind. The transcript discloses the observational basis for the identification, an express possibility of mistake, a less-than-certain confidence range, and the absence of independent confirmation.

If Harpole is a public or limited-purpose public figure, the First Amendment requires clear and convincing proof that Snow knew the challenged communication was false or subjectively entertained serious doubts. N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); St. Amant v. Thompson, 390 U.S. 727, 731-32 (1968); Charles, 693 S.W.3d at 280-82. If Harpole is a private figure, Tennessee requires at least negligence as to falsity. Memphis Publ'g Co. v. Nichols, 569 S.W.2d 412, 417-18 (Tenn. 1978); see Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974) (holding that states may not impose defamation liability without fault). In either event, the TPPA requires evidence, not the circular allegation that because Plaintiff disputes the identification, Snow necessarily fabricated it.

**C. Generalized injury allegations do not establish Snow-specific causation and damages.**

The Complaint alleges reputational, emotional, and economic harm from a broader publication campaign attributed principally to Owens and related entities. Compl. ¶¶ 71-78, 136-37, 150. Plaintiff's opposition likewise refers generally to professional and personal damage, financial harm, lost business opportunities, and emotional distress. Pl.'s Opp. 16-17, ECF No. 37. Plaintiff must still connect an actual, legally cognizable injury to a false and actionable communication attributable to Snow.

At the TPPA prima-facie stage, vague or conclusory assertions of reputational or business loss do not substitute for evidence of actual injury. In Blythe v. Forsythe, the Tennessee Court of Appeals affirmed TPPA dismissal where the claimant offered only generalized assertions and no specific facts showing actual reputational or business injury. No. M2023-01463-COA-R3-CV, slip op. at 9-13 (Tenn. Ct. App. Nov. 6, 2025). The court reiterated that actual damages must be sustained and proved and that assertions of fact in a brief do not themselves constitute evidence. Id.

The present record does not identify a client, contract, opportunity, termination, reduction in compensation, or other economic event caused by Snow's December 18 statements. Nor does it identify a person whose view of Harpole changed because of Snow's words, or otherwise supply specific proof of reputational injury caused by Snow. Most importantly, the record does not separate any injury attributable to Snow's qualified identification from criticism arising from the preexisting public controversy over security at the September 10 event or from Owens's earlier, later, and repeated publications. If Plaintiff supplies admissible evidence in response, § 20-17-105(b) still requires evidence from which a rational factfinder could attribute an actual injury to Snow's own actionable communication rather than to those independent sources.

The conspiracy label cannot supply missing causation unless Plaintiff first establishes an actionable underlying tort and an actual unlawful agreement. Continued employment or compensation, if later established through competent evidence, could bear on a claimed economic loss; it would not, standing alone, disprove a properly supported claim of reputational or emotional injury. Snow therefore does not rely on unverified assertions about Harpole's present employment, compensation, other clients, or other sources of payment.

## VII. THE CONSPIRACY CLAIM ALSO FAILS THE TPPA PRIMA FACIE STANDARD

Tennessee civil conspiracy requires a common design between two or more persons, concerted action to accomplish an unlawful purpose or a lawful purpose by unlawful means, an overt act, and injury. Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). It is derivative and fails without an actionable underlying tort. Watson's Carpet & Floor Coverings, Inc. v. McCormick, 247 S.W.3d 169, 179-80 (Tenn. Ct. App. 2007).

The Complaint's factual chronology does not itself show a knowing common design to defame Harpole. It alleges that a third party referred Snow to Owens, that Owens called Snow, and that Owens later called to request an interview. Compl. ¶¶ 127, 140-41, 146. Lawful communications between a source and a media commentator, followed by an interview, do not without more establish an agreement to publish a knowingly false accusation.

The recording is inconsistent with the specific common design Plaintiff proposes. Snow openly acknowledged possible mistake; Owens said she could not confirm the identification and cautioned against extrapolation; Snow disclaimed knowledge of what would happen the following day; and Owens later supplied broader conclusions after Snow left. ECF No. 33-1. Nor does a fundraiser announced near the end of the interview itself prove a preinterview quid pro quo. Snow's accompanying declaration states that there was no agreement to fabricate an account or accuse

Harpole of murder, that no fundraiser was negotiated as consideration for the interview, and that Snow did not receive its proceeds. Snow Decl. ¶¶ 8-13.

Plaintiff cannot use conspiracy to accomplish indirectly what his defamation theory cannot accomplish directly: attributing Owens's independent statements, editorial decisions, and later commentary to Snow. Without evidence of a Snow-specific actionable communication and a knowing unlawful agreement, Count V cannot survive § 20-17-105(b) and is also subject to Snow's valid defenses under § 20-17-105(c).

## VIII. SNOW PRESERVES THE UNRESOLVED FEDERAL-COURT ISSUE

Snow acknowledges the substantial federal-procedure obstacle. Federal district courts in Tennessee have held that the TPPA's special dismissal mechanism does not apply in federal court. Santoni v. Mueller, No. 3:20-cv-00975, 2022 WL 97049, at *14 (M.D. Tenn. Jan. 10, 2022); Patriot Angels Consulting Corp. v. Veterans of Foreign Wars of the United States, No. 3:24-cv-00087, 2026 WL 625680, at *14-16 (M.D. Tenn. Mar. 5, 2026); see also Lampo Group, LLC v. Paffrath, No. 3:18-cv-01402, 2019 WL 3305143, at *3-4 (M.D. Tenn. July 23, 2019) (holding that California's anti-SLAPP motion-to-strike procedure conflicts with Federal Rules 8, 12, and 56).

Patriot Angels also recognized that the Sixth Circuit has not resolved the issue and that advocating TPPA applicability is not frivolous because courts nationally are divided. 2026 WL 625680, at *15-16. Tennessee, for its part, declares that the TPPA provides a "substantive remedy" and directs liberal construction to effectuate its purpose. Tenn. Code Ann. § 20-17-109. More recent Tennessee authority describes the prima facie inquiry by reference to familiar evidentiary standards resembling those used under Rules 50 and 56. SmileDirectClub, 708 S.W.3d at 570-72.

Snow therefore preserves the argument that at least the TPPA's substantive protections—including dismissal and applicable cost-shifting consequences—may be applied through compatible federal procedures. He does not ask a state procedure to displace a controlling Federal Rule. If the Court follows Lampo, Santoni, and Patriot Angels, Snow requests only that the TPPA issue be preserved and that denial on Erie grounds not be construed as a merits ruling or waiver of his pending Rule 12 defenses.

## IX. RELIEF REQUESTED

WHEREFORE, Defendant Mitchell H. Snow respectfully requests that the Court:

1. first decide Snow's pending Rule 12(b)(2) motion and dismiss the claims against him without prejudice for lack of personal jurisdiction;
2. alternatively, if the Court reaches the merits and determines that the TPPA applies in whole or relevant part, grant this Motion under Tenn. Code Ann. §§ 20-17-104 and -105 and dismiss Counts IV and V against Snow with prejudice;
3. award any court costs and other expenses recoverable under Tenn. Code Ann. § 20-17-107, while reserving any attorney-fee determination unless and until fees are actually incurred and legally recoverable;
4. to the extent the TPPA's discovery stay does not operate directly in federal court, exercise the Court's federal authority to stay or limit merits discovery concerning Snow until the threshold motions are resolved; and
5. grant any further relief the Court deems just and proper.

Respectfully submitted,

Date: 7 Sept, 2026

_______________________

MITCHELL H. SNOW
Defendant, Pro Se
9315 Welsh Dr.
Pasco, WA 99301
Telephone: 509-412-4498
Email: Justice4Nate@PM.ME

**CERTIFICATE OF SERVICE**

I certify that on 7 Sept, 2026, I submitted the foregoing through the Court's Pro Se Electronic Filing Portal. Upon docketing, CM/ECF will serve registered counsel through the Notice of Electronic Filing. Any person not served electronically will be served as required by Federal Rule of Civil Procedure 5 and the Local Rules of this Court.

_______________________
MITCHELL H. SNOW