**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| BRIAN HARPOLE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No.: 3:26-cv-00556 |
| | § | |
| CANDACE OWENS, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**OWENS DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR (1) PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM; (2) TENNESSEE PUBLIC PARTICIPATION ACT PETITION TO DISMISS PLAINTIFF'S COMPLAINT; AND (3) PARTIAL MOTION TO STRIKE**

## I. INTRODUCTION

Plaintiff's Response depends on characterizations that the transcripts of the challenged publications and Plaintiff's own interviews refute. Plaintiff also mislabels his national podcast appearances as "defensive[,]" *see* Doc. 46 at 4, despite appearing on the Shawn Ryan Show *before* Ms. Owens named him, *id.* at 22–23, and using that appearance to urge the public to "[d]o a FOIA" and to ask of Charlie Kirk's assassin: "Is he a Patsy?" *See* Doc. 31-6 at 46:9, 127:10.

Plaintiff's authorities do not help him, either. *Gilmore v. Jones*—Plaintiff's lead actual-malice case, Doc. 46 at 27—held a plaintiff was a limited-purpose public figure at the pleading stage based on a transcript of his national television appearance and an editorial he wrote. 370 F. Supp. 3d 630, 667–69 & n.41 (W.D. Va. 2019). And *Harte-Hanks Commc'ns, Inc. v. Connaughton*—on which Plaintiff relies for his profit-motive theory—holds that a defendant's profit motive does not "suffice to prove actual malice." 491 U.S. 657, 667 (1989). For these reasons and others, the Owens Defendants' Motion and TPPA Petition should be **GRANTED**.

## II. ARGUMENT

### A. THIS COURT MAY CONSIDER THE TRANSCRIPTS.

A court may consider an exhibit "if a complaint refers to the exhibit and if the plaintiff's claim depends on it" and may do so "without converting the motion to dismiss into a motion for summary judgment." *Blackwell v. Nocerini*, 123 F.4th 479, 486–87 (6th Cir. 2024). Here, Plaintiff's claims depend on the episodes over which he has sued, which his Complaint cites by timestamp. *See, e.g.*, Doc. 1 at 15 nn.6–8. Plaintiff's Complaint also pleads and relies on the two interviews, *id.* ¶ 28, which the Owens Defendants cite only for what Plaintiff said during them.

Plaintiff's reliability objection fares no better. His lone authority involved criminal-trial transcripts that were "the product of a government conference where several agents offered their independent recollection of the taped conversations." *United States v. Robinson*, 707 F.2d 872,

879 (6th Cir. 1983). But here, a court reporter certified each transcript as accurate. *See* Doc. 31-1 at 42; Doc. 31-2 at 47; Doc. 31-3 at 50; Doc. 31-4 at 43; Doc. 31-5 at 68; Doc. 31-6 at 132; Doc. 31-7 at 200. Plaintiff also relies on the transcripts himself, *see, e.g.*, Doc. 46 at 10, and he identifies no inaccuracy in any of them, *see generally id.* Thus, the transcripts may be considered.

## B. THE CHALLENGED STATEMENTS ARE NOT ACTIONABLE.

Plaintiff does not respond to the Owens Defendants' argument that the "supposed to be" a medical bag remark is not actionable. *Compare* Doc. 31 at 12–13, *with* Doc. 46. Nor does he dispute that a charge of professional unfitness, standing alone, is opinion.[1] *See* Doc. 31 at 17–18. Thus, Plaintiff has waived opposition to dismissal on these grounds. *See, e.g.*, *Cruz v. Cap. One, N.A.*, 192 F. Supp. 3d 832, 838–39 (E.D. Mich. 2016) ("A plaintiff abandons undefended claims." (collecting cases)); *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (collecting cases). And all of the arguments Plaintiff does make fail.

**<u>Rooftop security and drones.</u>** Ms. Owens played Plaintiff's own verbatim account of the rooftop exchange ("I come back and said, I was told students have access above us. . . . He comes back and his last correspondence was, I got you covered.") before concluding: "On the basis of that answer you should all be fired." Doc. 31-4 at 20:16–21, 22:8. Plaintiff says Ms. Owens wrongly attributed that exchange to him rather than to Dan Flood, *see* Doc. 46 at 10, but Plaintiff told it as his own account and never mentioned Flood, saying: "And I come back and said . . . . What else am I to do . . . ?" Doc. 31-6 at 44:14, 44:21–23; *see also id.* at 43:16–44:23.

Separately, Ms. Owens never said in the November 18th episode that Plaintiff lied about drones. Instead, after playing Plaintiff's explanation, she said: "Nor do I find him to be convincing,

[1] Plaintiff argues instead that Ms. Owens conveyed that charge through specific false facts, Doc. 46 at 10, 17–18—an argument which fails for the reasons below.

right? The vibe I'm getting from that interview is dishonesty." Doc. 31-4 at 25:2–3. Such sentiments—like Ms. Owens's statement that "you should all be fired"—are pure opinion, and an opinion "based upon disclosed, nondefamatory facts" is not actionable, "no matter how derogatory it may be." *Windsor v. Tennessean*, 654 S.W.2d 680, 685 (Tenn. Ct. App. 1983).

**"[S]itting duck" and "shady."** Plaintiff's account of the "shady" remark omits that Ms. Owens first told her audience that, on review, the security team only "looks like they're handing something off but they actually don't." Doc. 31-3 at 44:16–18. And she closed by saying: "I don't know what -- what they were doing." *Id.* at 45:3–4. Plaintiff—who says a "sitting duck" remark that did not name him can be understood as accusing him of leaving Kirk exposed, Doc. 46 at 12–13—also *described his own team the same way:* as "sitting ducks[.]" *See* Doc. 31-7 at 104:4–5.

Words like "sitting duck" are "loose, figurative or hyperbolic language," which "will not provide a legal basis for defamation." *See Hibdon v. Grabowski*, 195 S.W.3d 48, 63 (Tenn. Ct. App. 2005) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)). Neither remark named Plaintiff, either. *See* Doc. 1 ¶ 104; Doc. 31-3 at 44:16–45:4. Thus, the group-libel defect dooms the claim, too, and that defect cannot be bridged by assertedly clarifying statements that came later. *See Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 717–18 (Tenn. Ct. App. 1983) (when the subject of the alleged defamation is ambiguous, the relevant question is what readers understood "at the time of publication"), *abrogated on other grounds as recognized in Hill v. State*, No. M2022-01749-COA-R3-CV, 2025 WL 1078167 (Tenn. Ct. App. Apr. 10, 2025).

**Questions.** Each authority Plaintiff invokes to argue that questions are actionable, Doc. 46 at 9 n.5, held that the question before it was inactionable. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1339 (D.C. Cir. 2015); *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995). The Tennessee Court of Appeals has held the same, stating a broadcast asking whether a

judge faced an ethics investigation was "just that—a question." *See Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313, 321 (Tenn. Ct. App. 2012).

So too here. "[I]s this how these assassinations happen?" was followed by "Is that what's happening even like at the White House level with the Thomas Crooks thing?" Doc. 31-4 at 24:17–20. These questions are not defamatory. And the same is true of the December 12th post's questions about a 911 call. Doc. 1 ¶ 45. The Complaint itself pleads that Ms. Owens had a 911 "call log sent to her[,]" which Plaintiff faults Ms. Owens for not discounting as possibly "doctored[,]" "redacted," or the product of "technological error[.]" *Id.* ¶ 111. But each of those possibilities is simply a potential answer to a question Ms. Owens was asking.

As for that post's statement that Plaintiff had "already been caught lying[,]" *id.* ¶ 45, Plaintiff says that statement "stood on its own," *see* Doc. 46 at 16. But Plaintiff's own standard requires consideration of the "'broader social context,'" *see id.* at 9, and in that context, "already" points to Ms. Owens's earlier commentary—which, as Plaintiff himself pleads, concerned whether he was "dishonest in his interview with Shawn Ryan"—after she played his own account. *See* Doc. 1 ¶ 33; Doc. 31-4 at 20:3–25:3.

**Charis Bible College.** Plaintiff says the Charis Bible College commentary implied undisclosed defamatory facts. Doc. 46 at 14–15. But Ms. Owens disclosed her basis: a tip that the Colorado event had "absolutely no security plan in place[,]" which she relayed after playing Plaintiff's own description of his team's advance planning. Doc. 31-5 at 3:4–6:1. Only then did Ms. Owens draw her inference: "If you expected Charlie to make it to September 11th, you would have been communicating about what he was doing up at the Charis Bible College." *Id.* at 6:6–9.

Plaintiff concedes that he "did not coordinate with Charis Bible College nor the Woodland Police Department[.]" Doc. 1 ¶ 73. His explanation—that "he was not advised that Charlie would

be visiting the school[,]" *id.*—thus disputes only Ms. Owens's *inference*; it does not render false the fact from which she drew her conclusion. And the remark that "[t]hat's what I mean when you lie a lot," *see* Doc. 31-5 at 6:3–4, characterizes the account Ms. Owens had just played and said Plaintiff "over describes[,]" *id.* at 5:17. Such a characterization of disclosed, non-defamatory facts is protected opinion. *See Croce v. Sanders*, 843 F. App'x 710, 716 (6th Cir. 2021).

**Medical aid.** The Complaint reads the December 16th post to mean Plaintiff "intentionally let Kirk bleed out and die from his gunshot wound instead of rendering aid." Doc. 1 ¶ 47. But that asserted implication cannot be squared with Plaintiff's allegation that Ms. Owens told her audience that Plaintiff "ran over to Kirk with [his] medical bag after he was shot[.]" *Id.* ¶ 112. Thus, the meaning Plaintiff ascribes to the December 16th post conflicts with what Plaintiff himself pleads Ms. Owens said.

**Implications.** Plaintiff's implication theory rests on "misleading omissions or juxtaposition[.]" Doc. 46 at 17. But his own Complaint alleges that Ms. Owens "admitted publicly" that Plaintiff "coordinated with local officials, planned security, and ran over to Kirk with a medical bag after he was shot." Doc. 1 ¶ 113. And allegations that Ms. Owens publicly disclosed the facts said to have been omitted necessarily fall short of pleading a distorting omission. *See Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978).

## C. PLAINTIFF IS A LIMITED-PURPOSE PUBLIC FIGURE.

The controversy here—the security failure that enabled Kirk's murder—existed from the moment Kirk was shot, and Plaintiff leads the company that was "responsible for providing security for Charlie Kirk" that day. Doc. 1 ¶¶ 4, 21. Plaintiff astonishingly calls that role "irrelevant" to his prominence in the public debate. Doc. 46 at 20. But it means Plaintiff "could realistically have been expected, because of his position in the controversy, to have an impact on

its resolution." *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980) (footnote omitted). Tennessee law holds the same: Public figures include "those who assume special prominence in the resolution of public questions." *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978). And no one could have assumed more prominence concerning how Kirk's security failed than Plaintiff.

Plaintiff's other authorities involved no such role. *Khawar v. Globe International, Inc.*'s plaintiff "was not a suspect in the investigation," and his only interview "occurred *after and in response to* the publication" at issue. 19 Cal. 4th 254, 265–66 (1998). *Wolston v. Reader's Digest Association*'s "never discussed th[e] matter with the press[.]" 443 U.S. 157, 167 (1979). And *Salem Media Group, Inc. v. Awan*'s held "subordinate, non-political service positions[,]" and their attorneys' comments "were limited to defending" them. 301 A.3d 633, 651–52 (D.C. 2023).

Plaintiff stands in a much different position. His authorities protect a plaintiff whose public response is confined to answering his attacker. *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1563 (4th Cir. 1994) ("[T]he counterattack must be made primarily in the forums selected by the original attacker." (footnote omitted)). But Plaintiff's public responses inarguably were not so limited. His first national interview preceded any statement by Ms. Owens naming him, Doc. 46 at 22–23, and he never mentioned Ms. Owens in that interview, *see generally* Doc. 31-6. Instead, Plaintiff blamed the university police chief, *see* Doc. 31-6 at 43:23–24 ("why he won't stand up like a man and admit this I don't know"); told the public to "[d]o a FOIA[,]" *id.* at 46:9; and asked whether the assassin had help and was a patsy, *id.* at 127:9–11. Eight days later, Plaintiff told Gary Melton that he wanted "to call Zuckerberg or Musk and say, hey, you know you guys are part of the problem, right?" Doc. 31-7 at 109:17–19.

Such conduct—which goes "well beyond any reasonable measure of self-defense"—does

not preserve private-figure status. *See Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 20 (1st Cir. 2011). *Gilmore* likewise held a plaintiff's national interviews "went beyond serving as a mere 'witness to history'" and thus supported public-figure status. 370 F. Supp. 3d at 668 (quoting *Wells v. Liddy*, 186 F.3d 505, 537 (4th Cir. 1999)). And *Clyburn v. News World Communications, Inc.*, which Plaintiff quotes for its doubts about "purely defensive" statements, Doc. 46 at 21 n.11, explained that "ordinarily something more than a plaintiff's short simple statement of his view of the story is required" and held the plaintiff there was a limited-purpose public figure. 903 F.2d 29, 32–33 (D.C. Cir. 1990). Thus, "going beyond an ordinary citizen's response"—which well describes Plaintiff's behavior—supports public-figure status. *See id.* at 33 (comparing that scenario with *Firestone*'s plaintiff, who confined her press conferences "to issues of no legitimate public concern") (describing *Time, Inc. v. Firestone*, 424 U.S. 448, 454 n.3 (1976)).

Plaintiff's bootstrapping argument fails for the same reason. It is true that a plaintiff's "active participation in that controversy" must "predate the defendant's statement." *Charles v. McQueen*, 693 S.W.3d 262, 278 (Tenn. 2024). But here, Plaintiff's participation in the controversy *did* precede Ms. Owens's statements naming him: He appeared on the Shawn Ryan Show on November 17, 2025, and Ms. Owens named him only afterward. Doc. 46 at 22–23. In *Hutchinson*, *Clark*, and *Wilson*, by contrast, the plaintiff's only media access came from the defendant's publication. *See Hutchinson v. Proxmire*, 443 U.S. 111, 136 (1979) (access "limited to responding to the announcement of the Golden Fleece Award"); *Clark v. Am. Broad. Cos.*, 684 F.2d 1208, 1219 (6th Cir. 1982) ("Following the Broadcast, the press has not clamored to interview her."); *Wilson v. Scripps-Howard Broad. Co.*, 642 F.2d 371, 374 (6th Cir. 1981) (plaintiff lacked "'regular and continuing access to the media'" (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 136 (1979))).

As to access, even a plaintiff who has "declined to comment" shortly after the challenged

statement may still have "access to effective channels of communication that allowed him to rebut any defamatory statements." *Charles*, 693 S.W.3d at 277. Plaintiff had such access here. *See* Doc. 1 ¶¶ 28, 54. And unlike *Robertson v. Upchurch*'s plaintiffs—who "did not choose the events" that brought them into public view, No. 3:23-cv-00770, 2026 WL 1258042, at *3 (M.D. Tenn. May 7, 2026)—Plaintiff chose to lead a public figure's protective detail and opted to take his account of its failure to huge national audiences. Thus, from at least November 17, 2025, onward, Plaintiff was a limited-purpose public figure. *See* Doc. 31 at 18–23. And the two statements that preceded that date—neither of which named Plaintiff—fail for the reasons stated above regardless.

## D. PLAINTIFF HAS NOT PLAUSIBLY PLEADED ACTUAL MALICE.

**Profit motive.** Plaintiff's "business model" theory (Doc. 46 at 4) fails because a publisher's "motive in publishing a story—whether to promote an opponent's candidacy or to increase its circulation—cannot provide a sufficient basis for finding actual malice." *Harte-Hanks*, 491 U.S. at 665. The portion of *Harte-Hanks* that Plaintiff cites (Doc. 46 at 26 n.13) says the same: "Nor can the fact that the defendant published the defamatory material in order to increase its profits suffice to prove actual malice." *Harte-Hanks*, 491 U.S. at 667. So does *Gilmore*. 370 F. Supp. 3d at 673 (a "preconceived narrative" is not "alone . . . enough to establish actual malice").

**Investigation.** Plaintiff's complaint that Ms. Owens did not seek his comment sooner (Doc. 46 at 28–29) fails as well, because "[f]ailure to investigate does not in itself establish bad faith." *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968). "[A] failure to thoroughly investigate a claim amounts to negligence, not actual malice." *Charles*, 693 S.W.3d at 282; *see also Elsten v. Coker*, No. M2019-00034-COA-R3-CV, 2019 WL 4899759, at *7 (Tenn. Ct. App. Oct. 4, 2019) (failure "to ask [the plaintiff] directly" did not "suggest [the defendant] purposefully avoided the truth"). And before her January 8th commentary, Ms. Owens repeatedly invited Plaintiff to speak

with her. Doc. 1 ¶¶ 54, 59. Plaintiff also says that Ms. Owens identified no basis for her commentary, while faulting her for commenting "in direct response to clips" of his own explanations. Doc. 46 at 29. Airing a plaintiff's account before responding to it, *see* Doc. 31-4 at 20:3–25:3; Doc. 31-5 at 3:4–6:9, also is the *opposite* of purposeful avoidance of the truth.

**Fort Huachuca.** Plaintiff's effort to import alleged Fort Huachuca malice into every other statement (Doc. 46 at 28, 30) fails for two reasons. *First*, the November commentary preceded the Fort Huachuca story, which Plaintiff says Ms. Owens first presented on December 9th, *id.* at 34. And later events are "not probative of [a defendant's] state of mind" when he published an earlier statement. *Elsten*, 2019 WL 4899759, at *6. *Second*, Plaintiff's own screenshots show that Ms. Owens repeatedly told her audience that she might be wrong about Fort Huachuca. She texted Plaintiff that she "would be happy to debunk Mitch if he perhaps is misremembering the faces he saw." Doc. 1 ¶ 55. She also told her audience that she was "open to the possibility that it may have just been a lookalike[,]" *id.* ¶ 60; that she would "remain open to the possibility that the people he believed he saw, may have been misidentified[,]" *id.* ¶ 63; and that "I was never fully committing myself to rely on Mitch's memory[,]" *id.* ¶ 68. More than that: The Complaint itself pleads that Ms. Owens asked Snow to estimate his confidence in his identification and that Snow, who described seeing "'someone with the same mannerisms'" as Plaintiff, answered "'95 to 99' percent[.]" *Id.* ¶¶ 51–52, 129. In other words, Ms. Owens's audience was informed repeatedly, in several different ways and by multiple speakers, that the Fort Huachuca theory was *uncertain*.

Plaintiff's contrary allegations rest on Ms. Owens's reading of documents. Plaintiff alleges that, because Ms. Owens viewed his flight records, she "knew" his attendance was "physically impossible[,]" *id.* ¶ 61, but he pleads that she read those records to "not provide an alibi" for the time of the meeting and "incorrectly stated" as much, *id.* ¶ 60—an allegation of error. And the

"Fort Huachuca Confirmed" post on which Plaintiff relies, *see id.* ¶ 63, is the same post in which Ms. Owens told her audience that she would remain open to potential misidentification and that "[w]hat we cannot confirm as of yet, is his memory of who he is convinced he saw[,]" *id.*

## E. PLAINTIFF'S REMAINING CLAIMS FAIL.

**Damages.** Plaintiff defends his implausible damages claims on the basis that *Poe* addressed proof of injury at summary judgment. Doc. 46 at 32. But the Tennessee Supreme Court requires a plaintiff to "plead and prove injury from the alleged defamatory words[.]" *See* Nichols, 569 S.W.2d at 419; *see also* *Byrd v. State*, 150 S.W.3d 414, 421 (Tenn. Ct. App. 2004) (affirming dismissal where the plaintiff, though "not required to *prove* injury to reputation" on a motion to dismiss, was "required to *allege*" it and did not). And *Kersey v. Wilson* affirmed judgment on the pleadings against a plaintiff whose complaint "refer[red] in the most general terms to damages in the form of loss of reputation" without facts attributing "any such loss to [the defendant's] alleged remark rather than to the behavior that she was commenting on." *See* No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006).

The same defect exists here. Plaintiff alleges only generally that his reputation "has been injured" and that he "has lost business opportunities and income[,]" Doc. 1 ¶ 115; *see also id.* ¶¶ 79–80, 109—alleged damages that have an obvious alternative explanation (namely, Plaintiff's failure to protect his charge). Plaintiff also pleads "commentators" crafted conspiracy theories implicating him, and Ms. Owens "is not the only one." *Id.* ¶ 22. Ms. Owens need not have been the sole cause, *see* Doc. 46 at 31, but Plaintiff must plausibly allege *some* injury connected directly to the statements challenged here, and he failed to do so.

Plaintiff's competing-explanations authority, *id.*, does not help him. In *16630 Southfield Limited Partnership v. Flagstar Bank, F.S.B.*, the Sixth Circuit affirmed dismissal where "the

existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." 727 F.3d 502, 505 (6th Cir. 2013). Here, Plaintiff's Complaint similarly supplies the obvious explanation for his damages: The public figure whom Plaintiff was responsible for protecting was murdered on his watch. Doc. 1 ¶¶ 4, 20–21. And reputational injury that results from other sources is not recoverable. *See Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 165 (Tenn. Ct. App. 1997) (setting aside award for reputational injury that, "if any, resulted from" other sources), *app. denied* (Tenn. Nov. 24, 1997).

Nor do the audience comments Plaintiff cites, Doc. 46 at 32, fill the gap. Those comments mostly respond to the Fort Huachuca story or come from other users. *See* Doc. 1 ¶¶ 43, 67, 77. None connects any lost client, opportunity, or income to any particular challenged statement.

**False light.** Whatever the overlap between Plaintiff's false light and defamation claims, *see* Doc. 46 at 32–33, his false light claim requires actual malice even if Plaintiff were a private figure, because it concerns "a matter of public concern." *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 647 (Tenn. 2001). Plaintiff does not dispute that this case involves a matter of public concern. *See generally* Doc. 46. Controlling law also requires Plaintiff to "specifically plead and prove damages allegedly suffered from the invasion of their privacy." *West*, 53 S.W.3d at 648. He has plausibly pleaded neither. And to the extent the claim rests on Fort Huachuca, Doc. 46 at 33, those allegations are not challenged here. *See* Doc. 31 at 7–8 & n.4.

**Conspiracy and aiding and abetting.** Plaintiff says his Complaint "directly alleges that the Owens Defendants knew Snow's defamatory Fort Huachuca story was false[.]" Doc. 46 at 34. But his pleaded facts do not support that conclusion. Plaintiff's screenshots show Ms. Owens repeatedly qualifying the story. *See supra* at 9. And his flight-record allegations plead that Ms. Owens stated the records "do not provide an alibi" for the time of the alleged meeting, Doc. 1 ¶

60—a disagreement about what the records show. Those allegations do not plausibly plead the requirement—which Plaintiff's own authority recognizes—that "each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (citation omitted). The same defect defeats aiding and abetting, which requires a defendant to know "his companions' conduct constituted a breach of duty[.]" *PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012) (quotation omitted).

What remains are "[c]onclusory allegations . . . unsupported by material facts[,]" which are "not . . . sufficient to state such a claim." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Plaintiff's own tacit-agreement authority adds that circumstantial proof "must create more than a suspicion or conjecture that a conspiracy exists." *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498, at *8 (Tenn. Ct. App. Sept. 27, 2007). Nor can Plaintiff's alternative negligence theory, *see* Doc. 46 at 34, supply the intent that conspiracy requires. *Cf. JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-cv-00469, 2020 WL 5877131, at *10 n.12 (M.D. Tenn. Oct. 2, 2020) (Judge Richardson questioning whether conspirators can agree "to do things with an *intent* to do them *negligently*").

**Motion to strike.** Plaintiff calls the Owens Defendants' request to strike "perfunctory[.]" Doc. 46 at 35. But it is brief because the point is simple: Allegations that Plaintiff himself calls "background"—concerning the First Lady of France, the Iran war, and the September 11 attacks, *id.*—have "no possible relation to the controversy" over Plaintiff's security work. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (collecting cases).

### F. Plaintiff's Injunction and TPPA Arguments Fail.

**Injunctive relief.** Plaintiff says he seeks only a "narrowly tailored" injunction against statements "adjudicated false." Doc. 46 at 7. But his Complaint asks for more—an order

"enjoining Defendants from republishing or reposting . . . similar such statements in the future[,]" Doc. 1 at 68—and no adjudication can reach "similar such statements" that have not yet been made. Further, the limited authorization of private-plaintiff injunctions recognized in *In re Conservatorship of Turner* "does not extend to defamation concerning public persons[,]" No. M2013-01665-COA-R3-CV, 2014 WL 1901115, at *15 (Tenn. Ct. App. May 9, 2014), which Plaintiff is. And even words adjudicated false "might be true on a different occasion or might be spoken without actual malice." *Sindi v. El-Moslimany*, 896 F.3d 1, 33 (1st Cir. 2018).

**The TPPA.** Plaintiff's argument rests on a conflict between the Federal Rules and the TPPA's evidentiary burden. *See* Doc. 46 at 6–7. But this Court need not resolve that conflict, because the TPPA provides that "the court shall dismiss the legal action if the petitioning party establishes a valid defense to the claims[,]" Tenn. Code Ann. § 20-17-105(c), and the valid defense here is Plaintiff's failure to state a claim under Rule 12(b)(6). Doc. 31 at 30–31. Thus, dismissal on that basis applies Rule 12's own standard. By the same token, Rule 56—like the TPPA—requires Plaintiff to come forward with admissible evidence to support his claims. That includes elements involving evidence that, if it existed, would be solely in his own possession (like damages and causally connected damages), and Plaintiff apparently does not have any. *See generally* Doc. 46. For these reasons, Plaintiff's claims should be dismissed.

Separately, Plaintiff's contingent request for "an opportunity to submit evidence" and "to seek specified discovery[,]" Doc. 46 at 7, fails procedurally. A motion is required to obtain an order, Fed. R. Civ. P. 7(b)(1), and "[a] response brief is not a motion[,]" *Ogle v. Jones*, No. 3:20-cv-293, 2024 WL 2224328, at *2 (E.D. Tenn. May 16, 2024). Nor will this Court entertain such a "suggested backup plan[.]" *See JRS Partners*, 2020 WL 5877131, at *1 n.1.

## III. CONCLUSION

The Owens Defendants' Motion and TPPA Petition should be granted in full.

Respectfully submitted,

By: /s/ Daniel A. Horwitz_________

DANIEL A. HORWITZ, BPR #032176
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
(615) 739-2888
daniel@horwitz.law

ROBERT A. PEAL, BPR #025629
MEGAN CATHERINE CHAMBERS, BPR #042312
SIMS FUNK, PLC
3102 WEST END AVENUE, STE. 1100
NASHVILLE, TN 37203
(615) 292-9335
(615) 649-8565 (F)
rpeal@simsfunk.com
mchambers@simsfunk.com

*Counsel for Defendants Candace Owens, Candace Owens LLC, and GeorgeTom, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 10, 2026, a copy of the foregoing was sent via certified USPS mail, postage prepaid, the Court's electronic filing system, or via email to the following:

TARA L. SWAFFORD, BPR # 17577
ELIZABETH G. HART, BPR # 30070
The Swafford Law Firm, PLLC
321 Billingsly Court, Suite 19
Franklin, TN 37067
tara@swaffordlawfirm.com
betsy@swaffordlawfirm.com

JACOB W. ROTH, ESQ.
Contarino Roth LLC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
jroth@contarinoroth.com

MATTHEW SETH SARELSON, ESQ.
Sarelson & Sajdera, PLLC
1601 Forum Place, Suite 202
West Palm Beach, FL 33401
matt.sarelson@ssxlaw.com

*Counsel for Plaintiff*

MITCHELL SNOW
9315 Welsh Dr.
Pasco, WA 99301
justice4nate@pm.me

*Defendant*

By: /s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176